IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| JUSTIN MOORE and JUDITH MOORE, | § | |
|     Plaintiffs | § | |
| | § | |
| Vs. | § | |
| | § | |
| DB INDUSTRIES, LLC d/b/a 3M FALL | § | |
| PROTECTION, CAPITAL SAFETY USA, | § | CIVIL ACTION NO. |
| CAPITAL SAFETY GROUP, and | § | 6:19:cv-00038-H |
| DBI/SALA | § | |
| | § | |
| SAFEWORKS, LLC d/b/a POWER | § | |
| CLIMBER WIND | § | |
| | § | |
| And | § | |
| | § | |
| POWER CLIMBER BVBA d/b/a POWER | § | |
| CLIMBER WIND | § | |
| | § | |
|     Defendants | § | JURY DEMANDED |

**PLAINTIFFS' DISCLOSURE OF EXPERT WITNESSES**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Plaintiffs Justin Moore and Judith Moore in compliance with the Federal Rules of Civil Procedure cited below, and subject to the *Stipulation to Continue Expert Designations and Reports* [Doc. 52], hereby disclose the identity of witnesses who the Plaintiffs may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705.

- *Federal Rule of Civil Procedure 26(a)(1)(A)(i)*: the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; *Federal Rule of Civil Procedure 26(a)(2)(A)*: In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at

trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

- *Federal Rule of Civil Procedure 26(a)(2)(B)*: Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

- *Federal Rule of Civil Procedure 26(a)(2)(C)*: Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.

## I.   RETAINED EXPERT WITNESSES

**Rodney Isom, Ph.D.**
**Isom Rehabilitation Consulting**
4201 Wingren Dr., Suite 212
Irving, TX  75062
972-650-6141
Vocational Rehabilitation, earnings/earning capacity

Dr. Isom will testify about Mr. Moore's vocational status, including the effects of Mr. Moore's injuries upon his ability (or capacity) to obtain and keep gainful employment.  Dr. Isom is an expert in the field of Vocational Assessment, Vocational Rehabilitation, and Vocational Planning.

Dr. Isom may testify that a neuropsychologist reported Justin meets criteria for the following

diagnoses: Mild Neurocognitive Disorder Due to Traumatic Brain Injury; Major Depressive Disorder, Single Episode, Severe and Post-Traumatic Stress Disorder. Dr. Isom may testify that Justin was employed as a wind power technician prior to injury. Dr. Isom may testify that as a result of Mr. Moore's cognitive deficits and his physical conditions, he is no longer physically or cognitively able to gain keep or perform any meaningful employment or gain any competitive employment, and is disabled. Dr. Isom may testify that Justin Moore has suffered an earning capacity loss of at least $90,000/yr (plus benefits)based upon the type of work which he was performing and his expected work life.

It is believed that Dr. Isom will testify based upon his training and experience, as well as a review of the relevant information outlined in his report and a review of the material generated during the discovery phase of this litigation (including those items described in his report). Further, his opinions are based upon his review of information concerning vocational opportunities to available to individuals such as Justin Moore, and his interview with Mr. and Mrs. Moore and review of the medical records available to him as well as Dr. Joyce's report and testing.

The general substance of Dr. Isom's mental impressions and opinions are set forth in his report (attached). Plaintiff incorporates by reference the deposition of Dr. Isom if and when taken, and any additional/supplemental reports he may provide.

The documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony are the following, which are also identified in his report:

1.  Tru Ortho PLLC's medical records
2.  Texas Physicial Therapy Specialists medical records
3.  Texas Orthopedics Sports & Rehabilitation's medical records
4.  Popham Chiropractic's medical records and bill
5.  Orthopaedic Associates of Central Texas medical records
6.  Longhorn Imaging medical records
7.  Leander Chiropractic Center medical records
8.  Family First Healthcare medical records
9.  Diagnostic Pain Center medical records and bills
10. Cervical MRI performed on August 12, 2019
11. Cedar Park Regional Medical Center's medical records
12. Cedar Park Occupational Medicine's medical records
13. Advent Health Rollins Brook Community's medical records
14. Austin Radiological Associates' medical records
15. Dr. Jacqueline Kelly's Life Care Plan
16. Dr. Jacqueline Kelly's Functional Capacity Evaluation
17. Dr. Robert  Josey's medical records
18. South Texas Radiology's left shoulder MRI medical record
19. Dr. Jamie Lynch's March 6, 2020 letter
20. Dr. Arthur Joyce's report

Dr. Isom's resumé, fee schedule and list of testimony have been previously provided. Plaintiff incorporates by reference Dr. Isom's report herein for information about his topics and substance of his anticipated testimony and the materials upon which he relied.

**Dr. Arthur Joyce, PhD, ABN**
4201 Wingren Dr., #112
Irving, TX  75062
972/650-6166
Neuropsychology

Dr. Joyce is a Neuropsychologist and an expert in administering and interpreting neurocognitive tests. Dr. Joyce may testify that Mr. Moore meets criteria for a diagnosis of Post-Traumatic Stress Disorder (PTSD), Depression and Neurocognitive Disorder due to Traumatic Brain Injury  Dr. Joyce will testify that as a result of injuries sustained in the incident, Mr. Moore demonstrates neurocognitive deficits in multiple areas, including attention (encoding, focus-execute); executive functions (working memory, problem solving); and memory (source memory). Behavioral disturbance is present, with difficulties associated with mood problems and apathy.

Dr. Joyce may testify that Mr. Moore suffers from injuries to his brain ranging from a moderate to severe injury cognitive disorder/deficits to mild neurocognitive disorder/deficits. Dr. Joyce may testify that Justin Moore displays signs and symptoms of PTSD and depression, and that Mr. Moore's difficulty managing instrumental activities of daily living, such as bill paying and taking medications, is also more consistent with an injury of greater severity. However, based on the entire set of data available at the time of his evaluation of Mr. Moore, Dr. Joyce will testify that he has diagnosed him with a Neurocognitive Disorder.

Dr. Joyce may testify that Mr. Moore also meets criteria for a diagnosis of Major Depressive Disorder, including sad mood, decreased interest and pleasure in activities, insomnia, psychomotor agitation, and fatigue, feelings of worthlessness, decreased concentration, and suicidal ideations.

It is believed that Dr. Joyce will testify based upon his training and experience as well as a review of the relevant information outlined in his report, a review of the material generated during the discovery phase of this litigation (including those items described in his report), his interview with Mr. and Mrs. Moore, and review of the medical records available to him.

The general substance of Dr. Joyce's mental impressions and opinions are set forth in his report (attached). Plaintiff incorporates by reference the deposition of Dr. Joyce, if and when taken, and any additional/supplemental reports he may write.

The documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony are the medical records and/or images from the following entities which are also identified in his report:

21. Tru Ortho PLLC's medical records
22. Texas Physical Therapy Specialists medical records
23. Texas Orthopedics Sports & Rehabilitation's medical records
24. Popham Chiropractic's medical records and bill
25. Orthopaedic Associates of Central Texas medical records
26. Longhorn Imaging medical records
27. Leander Chiropractic Center medical records
28. Family First Healthcare medical records
29. Diagnostic Pain Center medical records and bills
30. Cervical MRI performed on August 12, 2019
31. Cedar Park Regional Medical Center's medical records
32. Cedar Park Occupational Medicine's medical records
33. Advent Health Rollins Brook Community's medical records
34. Austin Radiological Associates' medical records
35. Dr. Jacqueline Kelly's Life Care Plan
36. Dr. Jacqueline Kelly's Functional Capacity Evaluation
37. Dr. Robert  Josey's medical records
38. South Texas Radiology's left shoulder MRI medical record
39. Dr. Jamie Lynch's March 6, 2020 letter

Dr. Joyce's resumé, fee schedule and list of testimony have been previously provided.   Plaintiff incorporates by reference Dr. Joyce's reports for additional information about his topics and substance of his anticipated testimony and the materials upon which he relied.

**John Swiger, Ph.D.**
**Our Lady of the Lake University**
411 S.W. 24th Street
San Antonio, Texas  78207
214/434-6711
Economist/Economic losses (including household services, lost earnings/capacity)

Dr. John Swiger is an economist and is expected to testify as to the economic losses suffered by Justin Moore and the corporate structure/worth of the defendants.

Dr. Swiger has reviewed the following material:

1. DB Industries, LLC's Objections and Responses to Plaintiff's Interrogatories

2. Defendant Safeworks, LLC's Objections and Answers to Plaintiff's Interrogatories

3. Plaintiff Judith Moore's Answers to Defendants DB Industries, LLC, Capital Safety USA, Capital Safety Group and DBI/Sala's First Set of Interrogatories

4. Plaintiff Justin Moore's Answers to Defendants DB Industries, LLC, Capital Safety USA, Capital Safety Group and DBI/Sala's First Set of Interrogatories

5. Plaintiff's Amended Complaint

6. Defendant Safeworks, LLC d/b/a Power Climber Wind and Power Climber BVBA d/b/a Power Climber Wind's Original Answer to Plaintiff's' Amended Complaint

7. Defendant DB Industries, LLC, Capital Safety USA, Capital Safety Group, and DBI/SALA's Answer to Plaintiff's Original Complaint

8. Report of Dr. Rodney Isom

9. Report of Dr. Arthur Joyce

Dr. Swiger may testify that lost earning capacity is measured as the difference between pre-injury and post-injury earning capacity. He may also testify about the present value of those losses and the lost household services sustained by Mr. Moore and his family. A summary of the losses is:

### <u>Aspect of Loss</u>

| Present Value | Past Losses | Future Losses | Total Losses |
|---|---|---|---|
| Lost Income | | | |
| Salary | $210,950 | $946,438 | $1,157,388 |
| Benefits | $31,642 | $141,966 | $173,608 |
| Household Services | $13,955 | $124,068 | $138,023 |
| Total Lost Earnings | $256,547 | $1,212,472 | $1,469,019 |
| Less: Income Taxes | $21,095 | $94,644 | $115,739 |
| NET ECONOMIC LOSS | $235,452 | $1,117,828 | $1,353,280 |

Dr. Swiger may also be asked to give testimony relating to lost earnings/earning capacity, lost household services as well as present costs, and future medical costs. Dr. Swiger may also have opinions about Justin Moore's work life expectancy, earning capacity, and costs of future care as outlined in his report (previously provided), and may also have opinions about the level of punitive damages, which may be appropriate in this case (if any). It is anticipated that Dr. Swiger will base his opinions upon those factual documents (such as income tax records, earnings history, and personnel files) produced in discovery, as well as university and government studies as referenced in his report. It is anticipated that Dr. Swiger may also base his opinions upon the financial data produced by the defendants, together with any relevant depositions. His opinions are more fully set forth in his report, in his deposition (if taken) each of which are incorporated herein by reference. His qualifications are described on his resumé (previously provided).

**Jacqueline Kelly, MD.**
904 W. 30th St.
Austin, TX  78705
512/299-3474
Physician/Life Care Planner

Dr. Kelly is an expert concerning the reasonableness and necessity of certain medical and health care costs, as well as the need for future health care and treatment.  Dr. Kelly is an MD and a Certified Life Care planner, and will testify about the type, nature and cost of Mr. Moore's past and future care.  Dr. Kelly will testify on the subject matters of the nature, extent, reasonableness, and necessity of the medical care received by Mr. Moore and that care which will be received in the future.  It is believed that Dr. Kelly will testify based upon her training and experience, as well as a review of the relevant information outlined in her report and a review of the material generated during the discovery phase of this litigation (including those items described in his report).  Further, her opinions are based upon a review of information concerning rates in the Central Texas area, her examination of Mr. Moore, her interview with Mr. and Mrs. Moore, the sources listed in her report, and review of the medical records available to her, including:

  Advent Health Rollins Brook Community Hospital
  (Lampasas) ARA Diagnostic Imaging
  Ron McGaugh, MD/Cedar Park Occupational Medicine
  Cedar Park Regional Medical Center
  Jay Borick, MD (orthopedist)
  Longhorn Imaging
  Theresa Jones, FNP/Family First Healthcare
  Leander Chiropractic
  Jeffrey Popham, DC
  Letter from Robert Josey, MD, 3/25/20.
  Results of Functional Capacity Evaluation.

The general substance of Dr. Kelly's mental impressions and opinions are set forth In her reports attached hereto and incorporated by reference as though set forth at length.  Plaintiff incorporates by reference the deposition of Dr. Kelly if and when taken, and any additional/supplemental reports she may provide.

Dr. Kelly may testify that in the Central Texas area, the anticipated cost of Mr. Moore's future cervical surgeries and surgery on his right arm is approximately $206,599.00

Dr. Kelly may testify that potential complications from the identified surgery include infection, nerve injury, blood clots and anesthesia problems, among others.  The cost of physical therapy may increase or decrease depending on recommendations of a physical therapist after surgery.  The costs may change if x-rays are not current or need to be repeated, or if additional

laboratory testing is requested.  Dr. Kelly may testify that the hospital costs are averages for cervical fusion without complications and cervical  fusion with major complications.

She may testify that as a result of the incident, Mr. Moore suffered:

1)   **Right shoulder:**
      Sprain right rotator cuff capsule  Right bicipital tendinitis  Impingement syndrome Unspecified injury long head of biceps
      Full-thickness rotator cuff tear (supraspinatus)  SLAP tear
      Failed right biceps tenodesis

2)   **Left shoulder**:
      Impingement syndrome
      Left bicipital tendinitis
      Left tendinitis long head biceps tendon

3)   **Neck**:
      Herniated cervical disc at C5-6
      Moderately severe central canal
      stenosis C5-6  Herniated cervical disc
      at C3-4
      Herniated cervical disc at C4-5  Herniated cervical disc at C6-7  Bulging disc at T1-2

4)   **Chest**:
      Strain of the muscle and tendon of the front wall of the thorax

   Dr. Kelly may testify that Mr. Moore's life expectancy is another 28.2 years, and that he suffers from chronic pain.

   Dr. Kelly may testify that Mr. Moore's future care needs include:

1)   **Orthopedic surgeon:** Mr. Moore should be under the regular care of an orthopedic surgeon.      The charge per annual visit, not including testing, will be $241.00.
      Total charge:   $6796.00

2)   **Spine surgeon:**   Mr. Moore should be under the care of a spine surgeon while he goes through  surgery  and  rehabilitation.    The  charge  per  visit,  not  including  testing  or procedures,  will  be $305.00.  He will require at least six visits over the next three years.
      Total:   $1830.00

3)   **Psychiatrist:**  Mr. Moore should be under the care of a psychiatrist, especially while his dose of gabapentin is being increased. This plan provides monthly visits for six months, followed  by   twice annual visits for life.  The charge per visit for psychotherapy and medication management will  be $286.00.
      Total charge:  $17,560.00

4) **Additional family physician visits:** Mr. Moore should have one additional visit with his family physician annually for such things as minor trauma, bloodwork, prescription refills, etc. The charge per visit, not including testing, will be $122.00, not including testing.
Total charge: $3440.00

5) **Anterior cervical discectomy and fusion:**[14] Mr. Moore should have an ACDF at C5-C6. This will require an overnight stay in the hospital if there are no complications. Charges will be as follows:
–surgeon's fee: $11,857.00
–assistant surgeon's fee: $2964.00
–anesthesia fee: $3600.00
–facility fee (Seton Medical Center, Austin): $96,393.00
–home nursing care: $300.00
–post-op PT: $3960.00
–post-op pain meds: $14.00

6) Right biceps tenodesis, repair/revision:[15]
–surgeon's fee: $4376.00
–assistant surgeon's fee: $1094.00
–anesthesia fee: $3600.00
–facility fee (Cedar Park Regional): $71,447.00
–home nursing care: $500.00
–post-op PT: $6480.00

–post-op pain meds: $14.00

Total both procedures: $206,599.00

7) **Physical therapy:** Mr. Moore will require brief periodic tune-up courses of physical therapy over the years. During these courses he will be evaluated for muscle imbalance, changes in strength and range of motion. He will be given a prescription of home exercises to follow to correct his deficiencies, maintain function, and improve pain. These courses will consist of 4 sessions every 3 years at a charge of $864.00 per course.
Total charge: $8122.00

8) **Individual counseling:** Mr. Moore should receive individual therapy to help him cope with his drastically altered circumstances of chronic pain and disability, inability to return to his former employment, altered self-esteem and self-image, and enjoyment of recreational activities. The charge per session with a PhD-level counselor will be $150.00. This plan provides for 40 sessions in the first year, 20 sessions in the second year, and 10 sessions in the third year.
Total charge: $10,500.00

9) **Couples counseling:** The Moores would benefit from couples counseling to help them adjust to their new circumstances. This plan provides for two sessions monthly for six months at a charge of $180.00 per session.
Total charge: $2160.00

10) **Neuropsychological evaluation:** Mr. Moore should undergo neuropsychological evaluation for cognitive changes that could impact his vocational re-training.
Total charge: $4000.00

11) **Gabapentin labs:** Because of the gabapentin he is taking, Mr. Moore should have one additional creatinine measurement per year to monitor his kidney function, and one serum gabapentin per year. The charge for these tests totals $118.00.
Total charge: $3328.00

12) **NSAID labs:** Because of the NSAIDs Mr. Moore requires, he should have an annual CBC and fecal occult blood test. These tests total $96.00.
Total charge: $2707.00

13) **Neck radiography:** Mr. Moore will require at least two more MRIs of the cervical spine without contrast, pre- and post-surgery. The charge per study is $1326.00.
Total charge: $2652.00

14) **Shoulder radiography:** Mr. Moore will require at least two more MRIs of each shoulder, each done with and without contrast, at a charge of $2058.00 each.
Total charge: $8232.00

15) **Gabapentin:** Mr. Moore is presently 300 mg of gabapentin daily, a minimal dose. Some chronic pain patients take as much as 2400 mg to 3600 mg/day. He should have a closely monitored increase in dosage. Higher doses can sometimes be associated with increased depression, yet another reason he should have psychiatric monitoring. This plan assumes an indefinite daily dose of 1800 mg per day. The charge per generic 600 mg dose is $1.67.
Total charge: $51,568.00

16) **Celebrex 200 mg:** Ms. Moore is presently taking ibuprofen 600 mg each morning. He will get better pain relief with a longer-acting NSAID, Celebrex 200 mg. The charge per generic daily dose is $5.86.
Total charge: $60,317.00

17) **Tramadol rescue medication:** Mr. Moore should be provided with tramadol as an infrequent rescue medication. The charge per generic dose is $0.44, and this plan provides for one dose per week.
Total charge: $647.00

18) **Cymbalta:** Mr. Moore would benefit from taking Cymbalta, which is helpful in chronic pain, depression, and anxiety.  The charge per generic daily dose is $4.76. Total charge:  $48,995.00

19) **Biofreeze topical gel:**Mr. Moore finds this helpful.  He uses one bottle every 2 weeks at a charge of $29.99. Total charge: $22,049.00

20) **Shower chair:**  Mr. Moore should be provided with a shower chair with back.  The charge will be $53.37 and it should be replaced every 6 years.[1] Total charge:  $251.00

21) **Wide-angle rearview mirror:** Mr. Moore should be provided with a wide-angle rearview mirror.  The charge will be $59.95 and it should be replaced every 5 years. Total charge:  $338.00

22) Because Mr. Moore was physically active before his injuries, he should have an evaluation by a  CRTS to help him identify recreational activities he can now participate in and the adaptive equipment with which to enjoy them. Total charge:  $175.00

23) **Cardiovascular exercise:** Mr. Moore should have a reclining stationary bike to maintain cardiovascular fitness.  The charge for a mid-range step-through recumbent bike, the Schwinn 270, is $599.00, including shipping.   This should be replaced every five years. Total charge:  $3378.00

24) **Weights:** Mr. Moore should be provided with a set of soft weights for use on the wrists and ankles.  The charge will be $34.00 and they should not require replacement. Total charge:  $34.00

25) **Therabands:** Mr. Moore uses Therabands at home. He should have a supply of bands in various tensions to maintain his strength.  The total charge for a supply of light, medium, and heavy bands will be $183.51, including shipping. Total charge:  $184.00

26) Mr. Moore should undergo a vocational evaluation.  He will be limited in his future work by pain,  decreased strength, and decreased range of motion in both upper extremities and the neck.  He will be unable to return to his former employment as a wind turbine technician.[18] He will probably require Sedentary or Light Duty work in the future. Total charge:  $3000.00

27) Mr. Moore should have his own case manager while he undergoes  neck surgery and

---

[1]PMSI Durable Medical Equipment replacement schedule

rehabilitation.  The charge for a CCM in his area is $100.00 per hour, and this plan provides for two hours of oversight monthly for the next three years.
Total charge:  $7200.00

The total charges for the above plan come to 472,062.00 in today's dollars.  Dr. Kelly's conclusions are based on reasonable medical probability and reasonable life care planning probability using standard methodology.  The totals are:

| | |
|---|---|
| Physicians' Care: | $ 29,626.00 |
| Future procedures: | $206,599.00 |
| Ancillary assessments: | $ 24,782.00 |
| Diagnostic testing: | $ 16,919.00 |
| Medications: | $161,527.00 |
| Supplies: | $ 22,049.00 |
| Equipment: | $     251.00 |
| Transportation needs: | $     338.00 |
| Recreational evaluation: | $     175.00 |
| Fitness/strength: | $   3,596.00 |
| Vocational evaluation: | $   3,000.00 |
| Case Manager | $   7,200.00 |
| TOTAL | $476,062.00 |

Dr. Kelly's resumé, fee schedule and list of testimony have been previously provided.  Plaintiff incorporates by reference Dr. Kelly's report herein for information about his topics and substance of his anticipated testimony and the materials upon which he relied.

Plaintiff reserves the right to supplement in accordance with the Federal Rules of Civil Procedure.

## NON-RETAINED HEALTHCARE EXPERTS

The anticipated testimony and subject matters on which the non-retained, medical experts, may testify are as follows:

NON-RETAINED HEALTH CARE PROVIDERS OR OTHER EXPERTS:

The Following individuals provided health care to Mr. Moore  These individuals have not been specially retained for this litigation.  Plaintiff is unaware of their expertise, credentials or other

background, other than as reflected in the medical records and health care records previously provided. Plaintiff is not aware of the hourly charges for these individuals' testimony and is not aware of any testimony they have provided in the last five years.

To the extent these individuals are qualified as experts under the federal rules of evidence, that they will base their testimony on their experience in training, the information typically and reasonably relied upon by experts and specialists in their fields , a review of the information described or listed in their respective records, and a reasonable degree of probability.  Plaintiff is unaware of these individuals' opinions or conclusions, other than as they may be stated in the medical records provided.


Employees, agents and staff,
including, but not limited to:
Konrad J. Eppel, M.D.
**Advent Health Rollins Brook**
608 North Key Avenue Lampasas, TX 76650
(512) 556-3682
*Treated Mr. Moore as result of incident*


Employees, agents and staff,
including, but not limited to:
Michael Harper, MD
**ARA Diagnostic Imaging**
12800 W. Palmer Ln., Suite 200
Cedar Park, TX 78613
(512) 485-7199
*Provided diagnostic studies*

Employees, agents and staff,
including, but not limited to:
Douglas King, DPT
**Baylor Scott & White Institute for
Rehabilitation Round Rock**
116 Sundance Pkwy, Suite 400
Round Rock, TX 78681
(512) 238-6200
*Provided Rehabilitation services to Mr. Moore.*

Employees, agents and staff,
including, but not limited:
Jefferey P. Klein, MD
**Capitol Anesthesiology Associates**
3705 Medical Parkway, #570
Austin, Texas 78705
(512) 454-2554
*Anesthesiologist/pain management*

Employees, agents and staff,
including, but not limited to:
Ron McGaugh, MD
**Cedar Park Occupational Medicine Clinic**
15004 Avery Ranch Boulevard, Suite 105
Austin, TX 78717
(512) 528-7401
*Treated Mr. Moore as result of incident*

Employees, agents and staff,
including, but not limited to:
Lindsey Lawrence, M.D.
**Cedar Park Regional Medical Center**
1401 Medical Parkway
Cedar Park TX 78613
(512) 528-7000
*Treated Mr. Moore as result of incident*

Employees, agents and staff,
including, but not limited to:
Robert S. Marks, M.D.
**Diagnostic Pain Center**
12176 N. Mopac Expy, Ste. D
Austin, TX  78758
512/981-7246
*Treated Mr. Moore as a result of the incident*

Employees, agents and staff,
including, but not limited to:
Theresa Jones, FNP
**Family First Healthcare Cedar Park**
651 North US Highway 183, Suite 110
Leander, TX 78641-8990
(512) 528-0432
*Mr. Moore's family physician*

Employees, agents and staff,
including, but not limited to:
Konrad J. Effel, M.D.
**Hill Country Emergency Medical Associates**
P.O. Box 638760
Cincinnati, Oh 45263
(888) 253-7165
*Treated Mr. Moore as a result of the incident*

Employees, agents and staff,
including, but not limited to:
David Blatchley, D.C.
**Leander Chiropractic Center**
211 South Highway 183
Leander, TX 78641
(512) 259-3547
*Treated Mr. Moore as result of incident*

Daniel A. Lerma
**Daniel A. Lerma, DC**
12001 North Central Expressway, Suite 800
Dallas, Texas 75243
(214) 750-6110
*Plaintiff's Designated Doctor*

Employees, agents and staff:
including, but not limited to:
James Callas, MD DABR
**Longhorn Imaging**
4316 James Casey, Suite #F110
Austin, Texas 78745
(512) 444-8900
*Provided Imaging Studies*

**William C. Nemeth, M.D.**
4534 Westgate Blvd., Suite 112
Austin, Texas 78745
(512) 334-2144
*Examined Mr. Moore Post Designated Doctor examination*

Employees, agents and staff,
including, but not limited to:
**Prime Laboratories**
1130 N. 9th St.,

Broken Arrow, OK 740712
(918) 940-3180
*Provided laboratory services to Mr. Moore*

Employees, agents and staff,
including, but not limited to:
Jay M. Borick, M.D.
Ben Szerlip, M.D.
Kathleen Felder, P.T., M.S.
**Orthopaedic Associates of Central Texas**
1401 Medical Parkway, Building C, Suite 100
Cedar Park, TX 78613
(512) 244-0766
*Treated Mr. Moore as result of the incident.*

Employees, agents and staff,
including, but not limited to:
Robert A. Josey, M.D.
**Orthopaedic Specialists of Austin**
4611 Guadalupe Street, Suite 200
Austin, TX 78751
(512) 476-2830
*Examined Mr. Moore.  Believes that neck injuries are related to incident and that surgery is required.*

Employees, agents and staff,
including, but not limited to:
**Jeffry V. Popham**
Jeffry V. Popham, D.C.
P.O. Box 37
Liberty Hill, TX 78642
(512) 778-5500
*Treated Mr. Moore as result of the incident.*

Employees, agents and staff,
including, but not limited to:
John P. Clements
**South Texas Radiology Imaging Centers**
18707 Hardy Oak Imaging & Interventional Center
San Antonio, TX 78258
(210) 617-9550
*Provided diagnostic studies.*

Employees, agents and staff,
including, but not limited to:
Zachariah Logan, M.D.

John Rodriguez, M.D.
Peter Garcia, M.D.
**Texas Orthopedic Sports and Rehabilitation Associates**
4700 Seton Center Parkway, Suite 200
Austin, TX 78759-4107
(512) 439-1000
*Treated Mr. Moore as result of the incident.*


Employees, agents and staff,
including, but not limited to:
Scott Cartwright, DPT,
Benjamin Menke, DPT
**Texas Physical Therapy Specialists**
10526 West Parmer Lane, Suite 403
Austin, TX 78717-5057
(512) 900-3302

Employees, agents and staff,
including, but not limited to:
Robert Josey, MD
**TexSpine Consultants**
4611 Guadalupe Street, Suite 200
Austin, Texas 78751
512-476-2830


Employees, agents and staff,
including, but not limited to:
Jamie Lynch, M.D.
**Tru Ortho**
18626 Hardy Oak Boulevard,
Suite 101
San Antonio, TX 78258
(210) 878-4116

Employees, agents and staff,
including, but not limited to:
Jack C. Carsner, M.D.
**U.S. Anesthesia Partners**
P.O Box 840853
Dallas, Texas 75284
(512) 454-0853

The list above includes health care providers with knowledge of the facts relevant to this case. To the extent that these individuals are experts in their field, it is anticipated that they will

have opinions concerning Mr. Moore's condition, diagnosis and prognosis.  It is anticipated that their opinions are contained within the medical records generated by these providers (and their depositions, if taken), and that their opinions are based upon their evaluation, histories, examinations, review of records of Mr. Moore, and a reasonable degree of probability as used within their respective field(s).  It is anticipated that they may have opinions concerning the past and future care costs associated with Mr. Moore's condition.  Please note that treatment and evaluations of Mr. Moore is on-going.

As indicated in their depositions (if/when taken), these doctors will be of the opinion that Mr. Moore's medical treatment was reasonable and necessary and caused by the incident in question.

It is anticipated that the medical care providers, including the physicians, will base their opinions upon their experience and training, any history or examinations of Mr. Moore which are or have been performed, a review of the test results and reports of results which are reflected in the medical reports or described in their depositions (if taken).

The experts listed above are licensed medical providers who have attended professional school for medical, psychological, or allied health training and participate in the care and treatment of patients with conditions the same or similar to that of Mr. Moore.   Plaintiff is unaware of their hourly charges (if any) for depositions.

## CROSS DESIGNATION

Plaintiff also reserves the right to call any employee and/or expert designated by the Defendants (including the Defendants themselves).  To the extent that they are experts, the employees, agents, supervisors, officers and/or consultants employed/retained by the Defendants may give opinions concerning the incident in question, safety practices, and the cause of the incident in question.

DATED:  August 14, 2020.

THE ROBERT PAHLKE LAW GROUP

*/s/ Kyle J. Long*

By: _____

PAHLKE LAW GROUP
Robert G. Pahlke, admitted *pro hac vice*
Kyle J. Long, admitted *pro hac vice*
2425 Circle Drive, Suite 200
Scottsbluff, Nebraska 69363-1224
Telephone (308) 633-4444
Facsimile (308) 633-4445
rgp@pahlkelawgroup.com
kyle@pahlkelawgroup.com

SOMMERMAN, MCCAFFITY,QUESADA &
GEISLER, LLP

Sean J. McCaffity
State Bar No. 24013122
George (Tex) Quesada
State Bar No. 16427750
3811 Turtle Creek Blvd, Suite 1400
Dallas, TX 75219
Telephone (214) 720-0720
Facsimile (214) 720-0184
smccaffity@textrial.com
quesada@textrial.com

James E. Wren
State Bar No. 22018200
One Bear Place #97288
Waco, TX 76798-7288
Telephone (254) 710-7670
Facsimile (254) 710-2817
james_wren@baylor.edu

SHANNON, PORTER & JOHNSON
Brandon S. Archer
State Bar No. 24059392
P.O. Box 1272
San Angelo, TX 76902-1272
Telephone (325) 653-4274
Facsimile (325) 657-0787
archer@shannonporter.com

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify this 14th day of August, 2020 that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5.  Therefore, this document was served on all counsel via electronic service.  Local Rule CV-5.

<u>*/s/ Kyle Long*_____</u>
Kyle Long