Dennis J. Seal, Ph.D., P.E.
Seal Design & Engineering, Inc.
Human Factors and Product Safety
6461 Lake Circle Drive
Dallas, Texas 75214

Mr. Gerardo Alcazar                                             12 November 2020
Blackwell Burke P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415

Re:   **Justin Moore and Judith Moore vs. DB Industries, LLC d/b/a 3M Fall Protection, Capital Safety USA, et al**
      **Civil Action NO. 6:19-CV-00038-H**

Dear Mr. Alcazar,

Per the request of your office and as a Professional Engineer (Texas No. 79090), I have been asked to investigate the safety areas of the above-referenced case. The primary issues of concern include (but are not limited to) employee safety, fall protection and occupational training, as well as product warnings and safety information as related to risk mitigation. The opinions expressed in this report are based on my education and experience in relevant areas of industrial safety engineering, my affiliation with the ANSI Z535 warnings committee, and my review of the materials available to me at the date of this report.

I have been requested to address the safety elements of this case, as these areas of my expertise relate to job safety analysis and hazard identification, fall protection equipment and risk mitigation, adequacy of warning labels and safety instructions, as well as relevant OSHA and ANSI regulations. Specifically, I have relied on ANSI standards, including ANSI Z359.1 and ANSI A14.3 addressing specific areas of Fall Protection as well as ANSI Z535 1-6 citing industry standards for warnings and safety information. I am being compensated at an hourly rate of $320.00 per hour for my services. My professional qualifications include the following:

  (1)  Approximately 40 years developing, testing and applying human factors and safety engineering standards and design criteria for industrial applications, consumer product design, occupational safety and health programs, warning labels and instructional materials.
  (2)  Academic positions at the University level in applied areas of human factors, systems safety and real-time engineering case studies, testing, statistical analysis and experimental methodology.
  (3)  Development and enforcement of OSHA training programs including the implementation and enforcement of OSHA 1910 and 1926 regulations, employee training, assignment of personal protective equipment and the development of facility warnings, product labels and end-user safety instructions.
  (4)  Former member of the American National Standards Institute (Z535.1-5) Committee responsible for published standards of warning labels, safety symbols, instruction manuals, graphics and other hazard alerting criteria.
  (5)  Current Member of G-45 Human Systems Integration Committee/SAE International Board responsible for documentation of Human Engineering Standards, Hazard Identification and Risk Resolution processes.

**EXHIBIT 2**

    (6)    Supervision of the design of safety information (labels and safety materials) for various forms of human interfaces including consumer products, avionic warning systems, heavy machinery, highway signage, embedded training programs, manufacturing environments and user instructions/manuals.

    (7)    Extensive research and published materials for corporate safety programs including systems integration, training and equipment, safety warnings, technical manuals, industrial safety, hazard analysis, risk mitigation and hazard resolution methods.

The opinions and conclusions documented in this report are based on my review of safety literature pertaining to fall arrest equipment for tower climbing. I have reviewed materials and publications related to employee training, user instructions and literature pertaining to occupational safety. Legal documents have been reviewed including plaintiff's complaint, deposition transcripts, interrogatories, user instructions, photographs and videos of laboratory tests and as well as other discovery production. Specifically, in preparation of this report I have reviewed the following materials:

1) Plaintiffs' Amended Complaint;
2) Plaintiff disclosures of expert witnesses, including Bastiaan Cornelissen, Ph.D., P.E.; Mark Russel, Pd.D., P.E.; and J. Nigel Ellis, Ph.D., CSP, P.E., CPE;
3) Plaintiff's discovery and production responses;
4) Defendant's discovery and production responses;
5) Case file images of incident gloves, harness, Ibex Belt, 3M LSAD-SAF sleeve, as well as radiographic and stereoscopic images;
6) Photographs of Invenergy Site Visit including incident cable and belt photos, exemplar welding kit, and interior photographs of Tower No. 41;
7) ESi inspection photographs and videos;
8) Product User Instructions for 3M DBI SALA LAD-SAF Ladder Safety System;
9) Deposition transcript and exhibits of: Justin Moore, dated September 24, 2020;
10) Deposition transcript and exhibits of: Rick Miller, dated October 29, 2020;
11) Government Industry Standards and Regulations (as related to workplace safety and fall protection): OSHA (29 CFR 1926.500-503, Subpart M; 29 CFR 1910.132); ANSI Z359.1: "Safety Requirements for Personal Fall Arrest Systems (PFAS), Subsystems and Components," ANSI A14.3: Standards for Ladders -Fixed-Safety Requirements; and ANSI Z535 1-6: Warnings Standards for Product Safety Signs and Labels.

## BACKGROUND

Based on my review of case materials, it is my understanding that Justin Moore was employed by Invenergy, LLC as a wind tower technician responsible for maintenance and diagnostics of electronic power systems. On June 8, 2017, while working at the Goldthwaite, Texas Invenergy location, Mr. Moore was inspecting an electronic component, requiring him to climb to the top of the windmill tower to the nacelle, perform diagnostics, and then climb down the tower ladder. According to the incident investigation report, Moore reached for the hatch and began his descent, and soon after the "IBEX broke," Moore fell approximately "10-20 feet…. and the LAD-SAF deployed with flying colors." Mr. Moore states he was not sure why the LAD-SAF unit did not deploy immediately, "as my hands were never on the LAD SAF." The investigation report cited a "Description of Root Causes," stating "the IBEX cable broke along with some slight oil residue on the ladder." Mr. Moore has testified that "grease on the ladder is a common occurrence since "the gearbox is above the ladder." (Re: Deposition of Justin Moore, Page 73, Lines 14-25). These areas and other job risk factors will be discussed in the report.

## **EMPLOYEE SAFETY:  Fall Protection and Risk Mitigation**

As a Professional Industrial Safety Engineer, I have reviewed the aforementioned materials available to me in this case relating to the fall of Justin Moore inside the windmill tower of Invenergy, LLC.  Throughout my career, I have evaluated many industrial facilities, manufacturing plants and different electronic systems in efforts to identify hazards and mitigate the risks associated with the operations and maintenance of industrial systems.  It is general knowledge in our engineering practice that a hierarchical preference exists with regard to risk mitigation and includes either safety by design, the use of engineering processes and/or personal protective equipment, the use of guards, employee training, safety instructions, and/or hazard warnings.

The proper methods for establishing an employee safety program are to address each specific job assignment as well as the hazard potential for each assigned task.  Special considerations must be given to all man-machine interfaces as well as the identification of risk severity and the associated probability of occurrence.  Hazards are traditionally categorized as electrical, mechanical, chemical, environmental, or job specific.  Once identified, such hazards and risk resolution procedures are required by OSHA to be documented into a corporate training program prior to allowing any employee begin their work assignments.  The specific consequences of each hazard and the associated "risk mitigators" (e.g. proper selection of fall protection equipment) must be addressed and all employees must remain under the guidance of a "competent supervisor" until pre-determined levels of qualification criteria are achieved.  This is the traditionally accepted method of hazard identification and risk mitigation as stated in OSHA fall protection programs and is the standard protocol of compliant safety engineering practices for all employers to follow.

The purpose of a fall protection program is to implement practices and procedures that will protect workers from specific fall classifications of hazards (e.g. for fall arrest, positioning and ladder climbing).  In accordance with OSHA regulations and applicable sections of OSHA 1910 and OSHA 1926, this can be accomplished by:

1) Assigning a "competent person" to establish, implement, and supervise all elements of the employer's Fall Protection Program;
2) Evaluation of the job site to determine what classification of fall hazards exist;
3) Selecting appropriate fall protection systems and subsystems;
4) Assuring proper construction and installation of all climbing systems;
5) Integrating approved systems for safe ladder climbs/descent (i.e. harness, cable grab, lanyard, and climb assist subsystems);
6) Providing adequate training to workers in the recognition of fall hazards and the selection, use, maintenance and storage of fall protection systems; and
7) Assuring safe levels of competence with recurring training and proper supervision of employees to ensure safe climbing practices are achieved.

Under the federal workplace safety legislation, the Occupational Safety and Health Act of 1970 (Occupational Safety and Health of Title 29 of the United States Code) and related code (i.e. Section 5(a)(1)) states that each employer " shall furnish to each of their employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."  Section 5(a)(2) states "each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

**<u>FALL PROTECTION – Applicable OSHA and ANSI Standards</u>**

Falls are generally classified as one of two leading causes of serious injury and death in the workplace, and falls from elevated ladder systems are without a doubt recognized risks that should be properly addressed by the employer in order to eliminate the potential of injury by implementation of Job Hazard Analysis (JHA), training and properly selected Personal Fall Assist System (PFAS).

The OSHA regulations stated above, addressing the general duty cause serve as the foundation of the employers' responsibilities to its employees.  This basic OSHA standard requires all employers to take whatever steps are necessary to ensure safe practices are followed in all required job operations.  Through applicable standards and enforcement criteria, this is intended to govern work procedures, including the identification of specific job hazards and the elimination of risk through training and the use of appropriate PFAS.  Specific OSHA standards and regulations relative to the employment and reported incident of Justin Moore include the following:

1) *29CFR1926 Subpart "M" – Fall Protection*
2) *29CFR1910.132 (d) - Hazard Assessment by Competent Employee*
3) *29CFR1910.132(f) – Training by a competent person*
4) *29CFR1910.29 – Ladder Safety Systems*
5) *29 CFR1910.30 – Training Requirements for Fall Protection*
6) *29CFR1910.140 – Personal Fall Protection Systems*

The employer's duty concerning the identification of fall hazards and risk resolution, including the use of appropriate PPE/PFAS is clearly stated in OSHA 1910.132(f) (1) "The employer shall provide training to each employee who is required by this section to use PPE."  A 40-hour, instructor-lead program is the industry norm for Competent Person training when the Competent Person is expected to use a variety of fall protection systems, evaluate hazards, write procedures, and supervise others. Each employee shall be trained to demonstrate proficiency in the following areas:

a. 1910.132(f)(1)(i) – When PPE is necessary;
b. 1910.132(f)(1)(ii) – What PPE is necessary;
c. 1910.132(f)(1((iii) – How to properly don, doff, adjust and wear PPE;
d. 1910.132(f)(1)(iv) – The limitations of the PPE; and,
e. 1910.132(f) (1) (v) – The proper care, maintenance, useful life and disposal of PPE.

It was the responsibility of Invenergy, LLC as the "employer" of Mr. Moore to adopt these OSHA Fall Protection Programs as company policy and administer training curriculum under the direction of a "competent supervisor."  By OSHA's definition of "competent person" a manager or supervisor shall be qualified to identify and evaluate each work site hazard requiring fall protection and the procedures to be followed to design and implement fall protection on the job once every three years.  Invenergy, LLC failed to implement a fall protection program based on the OSHA standards and regulations listed above.  Both Invenergy (as employer) and Moore (as employee) failed to follow the user instructions and warnings included with the 3M LAD-SAF X3 cable grab and failed to comply with the PFAS equipment use requirements as described in the 3M User Instructions.

## SAFETY ENGINEERING and ROOT CAUSE ANALYSIS

Peer accepted engineering approaches to the hazard identification and mitigation process involves the practice of root cause analysis. This safety approach recognizes that in the exercise of reasonable forethought, employers can anticipate workplace risk factors and prevent injuries by various methods of hazard control. These methods listed in order of mitigation preference include (1) hazard elimination by control of product design and job processes, (2) minimizing the risk of hazards by the use of safety devices or guards, (3) establishment of safe practices typically conveyed by training programs, user instructions and technical manuals, and (4) the use of communication systems such as safety signs and product warnings. Per ANSI as well as other industry standards, warnings are prohibited from being the only safety measure when the severity of consequence is serious injury or death. Employers must adopt more formidable measures of mitigation such as "competent person" training, thorough JHA for each job task, compatibility of safety equipment (PPE/PFAS) and work place inspections.

In this matter and relative to defendant 3M I have reviewed case related materials and set forth opinions relative to the likely root causes of Mr. Moore's reported accident and the alleged role of the 3M LAD-SAF X3 cable clamp/sleeve. Based upon the information I have reviewed and considering the job hazards to which Mr. Moore was exposed it is my expert opinion his fall was not the result of inadequate warnings either on the LAD-SAF X3 product, or the safety information contained in the LAD-SAF User Instructions documents. The workplace hazards at the Invenergy job site (wind turbine tower) would be categorized as procedural (i.e. unsafe work practices), environmental (i.e. grease residue on ladder/cable), and also include personnel exposure to fall hazards as a result of a non-approved fall protection subsystems (i.e. IBEX climb assist subsystem) for the intended job. It is the employer's responsibility to assess all work place hazards and ensure proper selection of PPE/PFAS and compatibility of all equipment subsystems.

During Mr. Moore's deposition he was asked if he had a certificate that identified him as a competent or qualified fall protection person, and his response was "Correct" (i.e. I do not have fall protection certification). (Re: Deposition of Justin Moore, Page 17, Lines 12-16) Further on in his deposition, Mr. Moore is asked if he ever discussed (with his supervisor) the topic of compatibility of the LAD-SAF sleeve with the IBEX system, and his response was "No, sir…that's their job to find that out." (Re: Deposition of Justin Moore, Page 132, Lines 19-25; and Page 133, Lines 2-7) Mr. Moore also states he had read the 3M DBI-SALA User Instructions (about four years ago), but wasn't sure if the IBEX system in the windmill tower is a DBI-SALA approved subsystem. The topic of system requirements is specifically stated in the 3M DBI-SALA User Instructions on the second page, **Section 2.0 "SYSTEM REQUIREMENTS;"** As cited in Figure 2 below, "the DBI-SALA LAD-SAF is designed for use with DBI-SALA approved components and subsystems. The use of non-approved components and subsystems … may jeopardize compatibility of equipment, and could affect the safety and reliability of the complete system." My review of the case file shows a lack of evidence that the employer of Mr. Moore had adequately communicated (i.e. by a qualified or competent person) and enforced the published safety instructions (including references to non-approved subsystems including climb assist systems) with the intent of (1) alerting Invenergy employees to specific job-related hazards, (2) establishing and enforcing safe operations and the use of approved climb assist equipment, and (3) inspecting the work environment while assessing the degree of employee exposure to all job-related risks, including, but not limited to "residual grease" on cables and ladders. It is evident from the case file including Mr. Moore's testimony that a competent person was not designated by Invenergy for the selection of an approved climb assist subsystem with the use of 3M DBI-SALA LAD-SAF ladder systems.

An integral element of all corporate training programs is the premise that the "risk level" and "hazard level" must be known.  Employees must be thoroughly trained, re-trained and made aware of specific hazards in their work environment.  The perception of a specific hazard and the associated levels of risk are the primary motivators for a change in behavior, i.e., accident avoidance by the use of proper safety practices, procedural methods and compatible personal protection equipment.  It is my expert opinion that Justin Moore did not receive appropriate training and specifically not with respect to the hazards associated with using a non-approved climb assist subsystem while using the 3M LAD-SAF X3 sleeve. The proper protocol for using non-approved subsystems, was specifically warned and documented in the 3M User Instructions (See Figure 2), i.e.  "The use of non-approved components and subsystems … may jeopardize compatibility of equipment, and could affect the safety and reliability of the complete system."

## WARNINGS: American National Standards Institute (ANSI Z359 and ANSI Z535)

As a member of the original ANSI Z5353 Warnings Standards Committee, I participated in the development of standards to include warnings criteria for product hazard labels, environmental signage, product specifications and other applications where it is necessary to warn the population of risks associated with personal use and limitations of a product.  The ANSI Z535 Standards were adopted as industry standards in 1991 and established the fundamental criteria for (1) the determination of hazard assessment, risk avoidance and warning labels; (2) verbiage and end-user comprehension objectives (3) graphical format and font size, legibility, for product specifications and safety instructions (based on Human Factors criteria).  The common denominator of all safety instructions is to develop an effective communication, which (1) identifies the hazard source; (2) identifies appropriate product specifications and use limitations; and (3) cites the potential consequences of a hazard and how to avoid.  Reviewing all product information including materials such as specifications, use limitations, component compatibility and conditions of use is required of employers and also employees using products associated with hazard risk consequences, such as tower climbing equipment.

As a member of the ANSI Committee and throughout my professional engineering career, I have used the same methodology, statistical test procedures and methods of determination to identify the need for warning labels.  On behalf of product manufacturers, I have determined the "need" for safety instructions and have developed specific warnings and product specifications based on the ANSI safety criteria for safety equipment, power tools, surgical instruments, industrial environments, aerospace systems, and recreational products.  I have used the same criteria as stated above while evaluating the safety instructions, warnings and product specifications of the 3M LAD-SAF cable grab and associated warnings and user instructions.  While ANSI Z535 calls out the graphical formats, message content, use of symbols and other criteria, ANSI Z359.1 specifies the "Safety Requirements for Personal Fall Arrest Systems**,** Subsystems and Components."  Sections 5.0-5.4 of ANSI Z539.1 address specific criteria for safety-related markings and instructions.  Section 5.1 cites criteria for legibility and that markings shall include part numbers, capacity ratings, and specific warning instructions to "follow manufacturer's instructions included with the equipment at time of shipment from the manufacturer."  Section 5.2 cites requirements for product year of manufacture, manufacturer's identification and part number; and section 5.2.6 calls out specific markings for "direction of use of the fall arrester and warnings against incompatible systems."  Section 6 specifies the need for "User Inspection, Maintenance and Storage of Equipment." These are only examples of ANSI Z359.1-2007 industry standards and safety requirements for Fall Protection equipment, Subsystems, and Components of which the 3M DBI SALA LAD-SAF markings and User Instructions have adopted and are in compliance with respect to its product markings and safety instructions.

Figures 1, 2a, and 2b (below) depict examples of labeled warnings and product specifications associated with the subject 3M LAD-SAF X3.  These safety descriptions and that of the 3M User Instructions clearly identify which fall protection systems are to be used for tower climbing and the necessity to "heed" all warnings and to ensure only its use with a DBI-SALA approved system.



**Figure 1: Product Warnings Showing Required Safety Information
And Product Limitations**



**Figure 2a: Section 2.0-DBI-SALA System Requirements
and Warnings**

> **2.0 SYSTEM REQUIREMENTS**
>
> **2.1  COMPATIBILITY OF COMPONENTS AND SUBSYSTEMS:** This equipment is designed for use with DBI-SALA approved components and subsystems. The use of non-approved components and subsystems (i.e. harnesses, lanyards, etc.) may jeopardize compatibility of equipment, and could affect the safety and reliability of the complete system. If you have questions on the installation or suitability of this equipment for your application, contact DBI-SALA.

**Figure 2b: Section 2.0-DBI-SALA System Requirements
and Warnings addressing Subsystem Compatibility**

The above Figures depict required safety information, product ratings and specifications that both the employer and employee must adopt for appropriate selection and use of fall protection equipment. As listed above, the 3M DBI-SALA safety information is compliant with warnings criteria of ANSI Z359 (Standards for Fall Protection) as well as ANSI Z535 (Standards for Product Labels).  The deposition testimony of Justin Moore reveals he was not aware of the "DBI-SALA Ladder System compatibility requirements or the need for training by a competent person."

## SUMMARY of EXPERT OPINIONS

There is insufficient evidence that Invenergy, LLC  had established the required safety training programs with the intent of (1) alerting employees to specific job-related risks associated with "tower climbing" activities, (2) providing appropriate training in accordance with OSHA 1910 and OSHA 1926 regulations regarding the use of proper fall protection, (3) using 3M fall protection equipment with DBI-SALA subsystems, including the IBEX climb assist subsystem; (4) ensuring the fall protection equipment is free of chemicals, including grease residue on all elements of the ladder system (e.g. cable sleeve, cable, and climb assist components); and (5) inspecting all elements of the subsystems including the condition of the IBEX belt.

Employees must be trained and made aware of all specific hazards associated with their job assignments and must be instructed by a certified "competent person" in the proper use of personal protective equipment. Safety literature states that employee training is a more effective method of risk mitigation when compared to static warnings. Warning labels are most effective when integrated with the Job Hazard Analysis and instructed to the employees within the context of a structured training program.  It is my expert opinion that Mr. Moore was not trained by his employers with respect to the proper methods of tower climbing including the selection and use of compatible fall protection equipment and subsystems. For these specific reasons, it is incumbent upon the employer to have a dedicated competent person evaluate all PFAS systems and subsystems, e.g. climb assist subsystem, ensuring equipment compatibility, proper usage and also training each employee in the methods of inspection to ensure safe working conditions before each assigned ladder climb and descent.

Based on forty years of industrial engineering experience, including the development and enforcement of OSHA 1910 and OSHA 1926 programs, as well as my professional affiliation with the ANSI Warnings Committee and to a reasonable degree of scientific certainty, I submit the following expert opinions:

1) In my expert opinion, Justin Moore was not qualified as a "competent person" for the identification of tower climbing hazards, selection of compatible fall protection equipment and subsystems nor was he knowledgeable of the hazard assessment procedures required to mitigate tower climbing risks.

2) Invenergy, LLC failed to establish, document and implement a Fall Protection Program that trained its employees in the proper methods of eliminating fall related hazards and the proper use of PFAS for this purpose. A dedicated fall protection program is the obligation of the employer and must be in full compliance with published OSHA Standards, for ensuring tower climbing safety.

3) Invenergy, LLC did not conduct an appropriate hazard assessment of wind tower No. 41 for Justin Moore before his assigned diagnostic service. In accordance with OSHA Standard 29 CFR 1910 (PPE) it is the employer's responsibility to conduct a hazard identification and risk mitigation program prior to each employee's job assignment. The employer must select and use fall protection equipment, components and subsystems such as a cable grab, sleeve, and ladder system approved for use with a climb assist subsystem.

4) Invenergy, LLC was using a climb assist device that was not approved for use with the 3M DBI-SALA ladder safety system, violating specific 3M warnings placed on the 3M cable grab and also stated in the DBI-SALA User Instructions (Re: Figures 1 and 2). The 3M User Instructions warn employers and users of fall protection equipment "The use of non-approved components and subsystems … may jeopardize compatibility of equipment, and could affect the safety and reliability of the complete systems."

5) In my expert opinion, and based on applicable standards referenced above as well as my affiliation with the ANSI standards committee, 3M complied with industry standards of component markings, warnings, product specifications and usage limitations as called out in ANSI A14.3. Invenergy failed to comply with 3M warning labels and the DBI SALA User Instructions which clearly stated the 3M LAD-SAF X3 must only be used with approved components and subsystems, which includes climb assist subsystems.

6) 3M encourages employers and the population of equipment users to contact 3M Technical Services if there are questions concerning use of its fall protection equipment and compatibility with non-DBI-SALA systems. Invenergy, LLC. failed in efforts to establish, implement and enforce an employee safety program that identified specific hazards associated with the use of non-approved components and subsystems for the purposes of tower climbing and descent.

In summary of my opinions and to a reasonable degree of engineering certainty, the fall and resulting injuries to Mr. Moore could have been avoided had the proper fall protection training been given, based on a thorough hazard analysis, and the use of an approved climb assist system been implemented by Invenergy, LLC. All necessary safety instructions, product specifications and markings were available to Invenergy and if reviewed and complied with, this incident would not have occurred.

In fact, even to this day, 3M has not approved the IBEX climb assist with the use of LAD-SAF X3 component. In my expert opinion, additional warnings, user instructions or safety labels would not have changed the outcome of Moore's fall. This unfortunate accident was the result of insufficient training, non-approved fall protection components and subsystems and the failure to follow 3M LAD-SAF warnings and user instructions.

This report is based on case specific documents as described earlier including industry-accepted publications and journal published literature. I reserve the right to revise these expressed opinions should additional materials become available.


Sincerely Yours,

Dennis J. Seal, Ph.D., P.E.
Seal Design & Engineering, Inc.
Human Factors/Product Safety Engineering



**Dennis J. Seal, Ph.D., P.E.**
**Seal Design and Engineering, Inc.**
**6461 Lake Circle Drive**
**Dallas, Texas  75214**
**Office: 214 823-9364**
**Cell:   214-734-3708**
**djseal@sbcglobal.net**

**EDUCATION:**
- **Ph.D.,** Industrial Engineering/Human Factors and Product Safety
  Texas A&M University, College Station, Texas, 1980
- **M.S.,** Experimental Psychology/Information Processing & Learning
  Texas A&M University, College Station, Texas, 1974
- **B.A.,** Psychology/Statistics, University of Cincinnati, Cincinnati, Ohio, 1972

**PROFESSIONAL EXPERIENCE:**

L3 Harris Corporation                                                    1985 – Present
Aerospace Systems, Plano, Texas
(Formerly Raytheon Systems, Chrysler Technologies and L-3 Aerospace, Inc.)
New York, N.Y. (Headquarters)
**Principal Systems Engineer:  Human Factors and Product Safety**

- Director of Human Factors and Safety Engineering for all Corporate Programs
- Conduct research and qualification tests to support program efforts in product development and subsystem design and integration.
- Apply Human Factors and Safety criteria in the design of visual displays and controls, workstation layouts, aviation systems, hazard identification and risk mitigation, warnings and alerting devices, software and technical user manuals, and operator/maintainer environments.
- Establish program plans, test procedures, and analyze test data and report results in technical documentation and/or at scheduled Design Reviews (e.g. PDR, CDR, TIMs).
- Prepare/manage budget and technical documentation for contract proposals.
- Establish/maintain Corporate Hazard Communication Programs (OSHA 1910) for employee training in safety and health, including workstation evaluations, facility safety,  HAZCOM initiatives, lift/weight issues, safety warnings and training.
- Integrate human engineering and safety criteria with mechanical and electrical engineers, software programmers, environmental test, quality control, and manufacturing departments during each appropriate design phase.

TEXAS INSTRUMENTS, INC., Dallas, Texas                                 1983 – 1985
**Director, Human Factors/Ergonomics – Consumer Products**

- Managed Human Factors Department for new product design, personnel staffing, administration and budget, product development activities, and test laboratory.
- Organized sample populations, methodology and research efforts for prototyped product tests (e.g. keyboards, joystick controls), analyzed results, and articulated production recommendations to the design staff.
- Establish Corporate Ergonomic product design criteria for U.S. and Japan Product Centers.
- Integrated Human Factors design criteria with Industrial Design, Graphics, Software, Marketing, Packaging, and Manufacturing staffs.

HENRY DREYFUSS ASSOCIATES, New York, New York                    1979 – 1983
**Senior Human Factors Engineer – Industrial Design/Consumer Products**

- Project activities included implementing human factors and safety requirements for consumer product designs.  Also conduct research and pilot studies, as well as evaluate scaled mock-ups and prototypes in support of new product development.
- Worked closely with clients (e.g. AT&T, Falcon Jet, John Deere and Company, CITICORP, LearJet, Polaroid, and American Airlines) during all phases of product design to ensure human factors, safety and ergonomic requirements were implemented in final production.
- Served as a committee member of American National Standards Institute (ANSI Z535) for the purpose of establishing industrial standards based on human perception, detection, and comprehension of displayed information for warnings, symbols, and visual displays.  Standards were adopted in 1991 for industry-wide use on commercial and industrial products.

SOUTHERN METHODIST UNIVERSITY, Dallas Texas                      1985 – 1986
**Adjunct Professor, Human Factors and Industrial Ergonomics**
**Operations Research and Engineering Management Department**
Taught Human Factors/Product Safety courses to undergraduate and graduate level students.

TEXAS A&M UNIVERSITY, College Station, Texas                     1977 – 1979
**Visiting Instructor, Department of Psychology**
Taught courses in Introductory, Industrial and Developmental Psychology to undergraduate and graduate level students.

DEPARTMENT OF TRANSPORTATION, Austin, Texas                      1977 - 1979
**Project Coordinator; Governor's Office of Traffic Safety**

- Program Manager for D.O.T. project evaluating interactive effects of vehicular design, vibration/noise levels, highway design, perceived rates of speed, and comfortable driving speeds.
- Responsibilities included proposal preparation, contract and budget coordination, supervising research assistants, data analysis, organizing progress reports, and presenting the findings to the Department of Traffic Safety.

TEXAS TRANSPORATION INSTITUTE, College Station, Texas            1975- 1977
**Research Assistant, Texas A&M University**

- Conducted studies to aid in the design and implementation of real-time information displays and warnings that were used on urban freeways and parallel alternative routes.
- Display designs were based on information processing theory, visual recognition, conspicuity and reaction times of drivers during simulated highway driving maneuvers.
- Results of study were used to publish the <u>Texas Manual on Uniform Traffic Control Devices (for streets and highway application)</u>.

**CURRENT RESPONSIBILITIES:**

Director of Human Factors/Ergonomics and Product Safety engineering for corporate engineering.  Engineering programs include systems design, product development and qualification tests, subsystem components, product designs and integrations, facility safety, aircraft modifications, hazard analysis and risk resolution.

As human factors and safety engineer responsibilities include continued compliance to OSHA HAZCOM, Environmental Protection Agency (EPA), National Institute of Occupational Safety and Health (NIOSH), American Disabilities Act (ADA), and American National Standards Institute (ANSI).

Also responsible for site surveys, product and systems evaluation, hazard identification, safety warnings (per ANSI Z535), and hazard resolution applications at all engineering, production and manufacturing phases.

Primary functions on engineering programs include workstation environments and component interface designs, anthropometric/operator studies/visibility, lighting and acoustic measurements, operator tasks and behavioral analyses, warnings, user manuals and training, design of controls and visual displays, hazard analysis and safety reviews, mock-ups and prototype evaluations, ergonomic analyses, software applications, and final system integration and qualification tests.

**AREAS OF INTEREST:**

Product functionality and safety, product testing and qualification, mission-control environments; information processing theory and learning; hazard identification/resolution; warnings/signs and labels; quantitative methods; human factors in aviation; accident investigation and transportation safety.

**PROFESSIONAL MEMEBERSHIPS:**

Registered Professional Engineer, State of Texas (P.E. 79090)
Registered Professional Engineer, State of Wyoming (P.E. 15888)
NCEES – Registered P.E.
Human Factors and Ergonomics Society-Member Emeritus
Ergonomics/Occupational Safety and Health
American National Standards Institute (ANSI)
Consumer Product Safety Commission (CSPC)
Electronic Industries Association (EIA G-45 and SAE)
Private Pilot (Current) - Aircraft Owners and Pilots Association (AOPA)

**SECURITY CLEARANCES:**

TOP SECRET (Active)
COMSEC (Active)



**Dennis J. Seal, Ph.D., P.E.**
**Seal Design & Engineering, Inc.**
**Human Factors/Product Safety**
**6461 Lake Circle Drive**
**Dallas, Texas**

Re:     **Rule 26-Testimony List for Dr. Dennis J. Seal (Texas P.E. 79090)**
            **Years 2016-2020**

2016   J. Martinez v. Tyson Foods, Inc.
            Cause No. 5:15-CV-271-XR
            Defendant-Deposition (February 12th, 2016)
            Brian J. Fisher; Kane Russel Coleman & Logan, PC (Dallas, Texas)

2016   Elsa Clementir v. 3M Company, et al
            Case: BC506479; Los Angeles County
            Defendant-Deposition (February 19th, 2016)
            David Taylor; Thompson Coe, et al  (Dallas, Tx)

2016   R. Reynolds v 3M Company, Inc.
            Case No.: 05-CI-00589
            Defendant-Deposition (May 12th, 2016)
            David Taylor; Thompson Coe, et al (Dallas, Tx)

2016   EVANTEK Manufacturing, LLC, et al v. T. Richards , et al
            Plaintiff-Trial (July 8th, 2016); Bloomington, Indiana
            Mark Moran and Wallace Dunwoody; Munck Wilson Mandala, LLP (Dallas, Texas)

2016   Van M. Parker v. 3M Company, et al
            Case No. 15-369-NJR-PMF
            Defendant-Deposition (July 27th, 2016)
            Kevin Brown; Thompson Coe, et al (Dallas, Tx)

2017   M. Corbitt v. SGMC
            Case No. 2011-SCV-29
            Defendant-Trial (January 23rd, 2017); Valdosta, Georgia
            James Thagard; Young, Thagard, Hoffman, Smith, Lawrence & Shenton, LLP

2017   W. Readwin v.3M Company, et al
            Case No. 16-2-18894-OSEA; Seattle, Washington
            Defendant – Deposition (February 10th, 2017); Dallas, Texas
            Kevin Brown; Thompson Coe, et al (Dallas, Tx)

2017   J. F. Collins v. 3M Company, et al
            Case No. 10-CI-00176; Knott County, Kentucky
            Defendant – Deposition (March 3, 2017); Dallas, Texas
            Bill Book; Tekell, Book, Allen and Morris (Houston, Tx)

2017    V. L. Griffin, Jr. v. Tyson Foods, Inc.
        Cause No. 2:16-CV-00734
        Defendant-Deposition (April 7th, 2017)
        Brian J. Fisher; Kane Russel Coleman & Logan, PC (Dallas, Texas)

2017    D. L. Rolefson v. Waxy O'Connor's Irish Pub & Eatery
        Cause No. 2015CI06996
        Plaintiff - Deposition (July 31st, 2017); Dallas, Texas
        Kurt Arbuckle; K. Arbuckle Law Offices, P.C. (Houston, Texas)

2017    R. Camacho v. Roywell Services, Inc.
        Cause No. 2016-01-12195
        Plaintiff – Deposition (October 20th, 2017); Corpus Christi, Texas
        Curtis Fitzgerald, III; Thomas J. Henry, Corpus Christi, Texas

2017    P. Salvador, et al v. 3M Company, et al
        Case No. 16-1-1167-06 (RAN)
        Defendant-Deposition (October 23rd, 2017); Dallas, Texas
        Kevin Brown; Thompson Coe, et al (Dallas, Tx)

2017    J. Karam v. Manraj Properties, LLC, et al
        Cause No. 2015-C116645
        Defendant-Deposition (November 17th, 2017); San Antonio, Texas
        Jeffrey House; Curney, Farmer, House, Osuna & Jackson, P.C.

2017    Angel Rigor v. 3M, et al
        Case No: BC660976
        Defendant-Deposition (December 29th, 2017); Dallas, Texas
        David Taylor; Thompson Coe, et al (Dallas, Tx)

2018    Burnis Hall, (Leslie Cox and Michael Cox) v. 3M Company, et al v. 3M, et al
        Case No: 16-CI-0100
        Defendant-Deposition (January 26, 2018); Dallas, Texas
        Kevin Brown; Thompson Coe, et al (Dallas, Tx)

2018    Re: Fred F. Williams vs. 3M Company, et al
        Case No: 16-CI-01061
        Defendant-Deposition (February 19th, 2018); Dallas, Texas
        Zandra Foley; Thompson Coe, et al (Dallas, Tx)

2018    J. Terry v. 3M Company, et al
        Case No: 16-CI-01061
        Defendant-Deposition (June 15th, 2018); Dallas, Texas
        Curt Webb; Beck & Redden Law Firm (Houston, Tx)

2018  G. Hall v. 3M Company, et al
      Case No: 15-CI-00310
      Defendant-Deposition (August 31st, 2018); Dallas, Texas
      Curt Webb; Beck & Redden Law Firm (Houston, Tx)

2018  D. Madrid v. STK Transport, Inc, et al
      Case No. 2016CI17478;
      Defendant-Deposition (September 19, 2018)
      Gordon Stafford; Law Offices of Mark Macias (San Antonio, Texas)

2018  G. McCarthy v. 3M Company, et al
      Case No: 15-5621
      Defendant-Deposition (October 8, 2018)
      Zandra Foley; Thompson, Coe, et al (Dallas, Tx)

2018  A. Rivera vs. Body Armor Outlet, LLC
      Case No: *1:17-cv-00512-LM*
      Defendant-Deposition (November 2, 2018)
      Gary Burt; Primmer, Piper, Eggleston, et al (Manchester, NH)

2018  T. Coleman v. 3M Company, et al
      Case No:
      Defendant-Deposition (November 2, 2018)
      David Taylor; Thompson, Coe, et al (Dallas, Tx)

2018  J. Lara v. Haulotte, et al
      Case No:
      Defendant-Deposition (December 7, 2018)
      Chris Frazier; Thompson, Coe, et al (Houston, Tx)

2018  G. McCarthy v. 3M Company, et al
      Case No: 15-5621
      Defendant-Trial (December 17, 2018)
      Zandra Foley; Thompson, Coe, et al (Dallas, Tx)


2019  G. Quinones vs. Regio Express Inc., et al
      Case No: C-1720-17-F
      Plaintiff-Deposition (February 11, 2019)
      Watts Guerra LLP (San Antonio, Texas)

2019  R. Lewis v. 3M Company, et al
      Case No: 18-2-09747-4
      Defendant-Deposition (February 15, 2019)
      Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2019  R. Lopez, et al vs 3M Company, et al
      Case No: 2017-DCL-05805
      Defendant-Deposition (February 22, 2019)
      Gerald Alcazar; Blackwell Burke, P.A. (Minneapolis, Minnesota)

2019   C. Burke/D. Slone, et al vs 3M Company, et al
       Case No:
       Defendant-Deposition (April 11, 2019)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2019   L. Leggett v. PAM Transports, Inc. , et al vs 3M Company, et al
       Case No: 5:18-CV-00040
       Plaintiff-Deposition (April 12, 2019)
       Watts Guerra LLP (San Antonio, Texas)

2019   J. Crawford vs J.B. Hunt
       Case No: 01-17-0001-1386
       Houston, Texas
       Defendant-Deposition (May 22, 2019)
       Michael Wright (Russell & Wright, Dallas, Texas)

2019   A. Agrios vs 3M Company, et al
       Case No: BC715172
       Defendant-Deposition (June 7, 2019)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2019   W. Frabotta vs. Nakkula/Waati
       Case No: 17-775-NO
       Marquette, Michigan
       Defendant-Deposition (July 29, 2019)
       Joseph McGill (Foley, Baron, Metzger & Juip, PLLC, Livonia, MI)

2019   P. Colon vs. John Christener Trucking, Inc. et al
       Cause No. 2018C103948
       Plaintiff-Deposition (August 30, 2019)
       Watts Guerra LLP (San Antonio, Texas)

2019   R. Larson vs 3M Company, et al
       Case No: 18-2-03806-5 SEA
       Defendant-Deposition (September, 2019)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2019   W. Wright vs 3M Company, et al
       Case No: 18-2-02204-5 SEA
       Defendant-Deposition (September 06, 2019)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2019   Leonard Rogers vs. GRACO, Inc., et al
       Cause No.: 70CV-15-225-6
       Defendant-Trial Testimony (September 13, 2019)
       Shawn Raiter; Larson King (St. Paul, Minnesota)

2020    Alfred Burton vs. 3M Company, et al
       Cause No.: 19-2-17070-1 KNT
       Defendant-Deposition (January 27, 2020)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2020    C. Armendarez vs. Hyundai Heavy Industries, LTD, et al
       Cause No.: D-1-101-CV-2017-03238
       Plaintiff-Deposition (June 22, 2020); Trial (October 13, 2020)
       Robert Collins; Robert Collins Law (Houston, Tx)

2020    M.R. Bush, et al vs. J. Armstrong, et al
       Cause No.: 2018C116581
       Plaintiff-Deposition (July 24, 2020);
       Mark Fassold; Watts Guera Law (San Antonio, Tx)

2020    L. Roemmich vs. 3M Company, et al
       Cause No.: 20-00926-1 KNT
       Defendant-Deposition (August 7, 2020)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)

2020    N. Butler vs. 3M Company, et al
       Cause No.: 2019-12696
       Defendant-Deposition (September 28, 2020)
       Kevin Brown; Thompson, Coe, et al (Dallas, Tx)