# DAVID G. VANDERWEIDE, M.D., P.A.

## DIPLOMATE, AMERICAN BOARD OF ORTHOPEDIC SURGERY
## FELLOW, AMERICAN ACADEMY OF ORTHOPEDIC SURGERY

November 4, 2020

Thompson Coe
Attn: Steven Augustin
One Riverway, Suite 1400
Houston, TX 77056

RE: Justin Moore

DOI: June 8, 2017
NOI: bilateral shoulder
TIN: 76-0404105
LIC: H5811

**INTRODUCTION**

Justin Moore is a 52-year-old right-hand-dominant 6'1" 248-pound white male who presents for the purpose of a medical evaluation. Medical records are provided for my review. I reviewed that information. Mr. Moore has provided me with additional historical information.

Prior to the evaluation, it was explained to the claimant that this appointment was for the purpose of evaluation only, not for care, treatment, or consultation and therefore, no doctor-patient relationship was created, exists, or would result from this evaluation. It was explained to the claimant that this examination is directed at specific injuries or conditions and does not constitute a general medical examination, and is not a substitute for medical care by the claimant's personal physician. The claimant was instructed not to engage in physical maneuvers beyond individual tolerance or limits, or to the extent that physical injury or harm could result.

**HISTORY**

Mr. Moore describes an injury event in which he was working in a wind turbine and had begun to descend. He was wearing harness. He was secured to a cable with a fall protection device. He was attached to a climbing assistive device as well.

He states that without warning, the climb assist device failed and he dropped what he estimates was 20 feet before the fall protection device arrested his dissent. He does not have clear memory of the details of the event, stating that it happened so quickly. He does have some recollection of trying to grab anything near to him to keep from falling.

He initially had complaints of pain in the chest wall and was seen by an occupational medicine provider. He was seen in an emergency room acutely. Within a couple of days, his symptoms became significant in both shoulders, left more than right.

333 NORTH TEXAS AVENUE, SUITE 2000
WEBSTER, TEXAS 77598
281-481-2649
281-481-0080 FAX

**EXHIBIT 7**

He states he was never provided any physical therapy or injections initially. He underwent MRI evaluations of both shoulders and was referred to an orthopedic surgeon.

Again, no conservative treatment was recommended. He ultimately underwent operative intervention on the right shoulder on September 11, 2017 for rotator cuff repair and biceps tenodesis.

Postoperatively, he was engaged in physical therapy. He has some recurrence of his biceps discomfort several months later and there was evidence of failure of the repair.

On September 5, 2018 he underwent left shoulder arthroscopy with biceps tenodesis.

In January 2019, he underwent an attempted reattachment of the right biceps tendon which was unsuccessful.

He describes a 2nd MRI of the left shoulder sometime in 2019. He was told that he had "tear". He is currently seeing Dr. Lynch in San Antonio and another surgery is been recommended for the left shoulder.

He states that about 2 months ago he was lifting a couple of gallons of milk with left arm and felt a pop over the anterior aspect of the shoulder with subsequent bruising and swelling.

Currently, he describes pain in the right shoulder, worse with elbow flexion or resisted supination. He also has some discomfort with abduction of the right shoulder. He describes pain in the left shoulder with abduction more than flexion. Pain is localized to the anterior shoulder. He also has discomfort in the biceps on the left and some pain with resisted supination.

He denies any prior history of difficulty with either shoulder.

He is currently on no medications for his shoulder.

He states he is not currently working. He had tried to return to some light duty after his injury event but stated that they wanted him to move things around in a warehouse and he could not do that.

**Medical Record Review**

On November 13, 2012, he was evaluated by Dr. Borick for complaints of low back pain and sciatica. Symptoms began about 2.5 months prior without injury event. An MRI from October 31, 2012 was described revealing a left paramedian L4-5 disc herniation with extrusion along the left L5 nerve root. "Multifactorial degenerative changes at L2-3, L3-4 and L5-1" are described.

On October 16, 2013, he returned to Dr. Jones for ongoing complaints of anxiety and depression and some upper respiratory symptoms. Cervical examination is unremarkable. No musculoskeletal abnormalities are recorded.

On June 8, 2017, Mr. Moore presented to Advent Health Rollins Brook community hospital emergency room for evaluation of a "trunk-chest injury" which occurred just prior to arrival. He presented by private vehicle. He described a 20-foot fall before the harness deployed. Degree of pain was "minimal". Injury occurred at work. Examination described diffuse tenderness along both ribs. Back was nontender. Range of motion was described as normal. No cervical abnormalities

are documented. Rib x-rays were unremarkable He was diagnosed with muscle strain. Prescriptions were provided.

On June 12, 2017, he was evaluated at Cedar Park Occupational Medicine Clinic for pain in the left rib cage and bilateral shoulders of 6/10 severity. Symptoms were intermittent. Medications for diabetes and hypertension were noted. Physical examination described bruising over the left anterior inferior chest and an abrasion over the same area. He was diagnosed with a rib sprain. Anti-inflammatory medications were recommended. He was to return in one week.

On June 19, 2017, Mr. Moore was evaluated at Cedar Park Occupational Medicine Clinic by Dr. McGaugh for complaints of pain in the left rib cage and left shoulder of moderate severity beginning after an injury on June 9, 2017. He is 49 years of age. Both symptoms were described as intermittent. Pain in the rib cage was 4/10. Pain in the shoulder was 6/10. He described a fall of 25-30 feet at which point he was caught by his harness. He was described as working full-time on regular duty. Past medical history was remarkable for hypertension and diabetes. Physical examination documented bruising over the left anterior inferior chest with an abrasion present over the left anterior inferior chest. He was diagnosed with a rib sprain. Medications were provided. He was to return in 2 weeks.

On July 7, 2017, he was evaluated by Dr. Borick for bilateral shoulder pain. He stated that he was at work when a cable line broke and he fell. He described pain over the anteromedial aspects of both shoulders, worse with movement of 7/10 severity. He is right-hand dominant. He is 49 years of age. Review of systems is remarkable for easy bruising, back pain, joint pain and neck stiffness but no neck pain. Cervical motion was normal. Painful and diminished range of motion was noted in both shoulders. Provocation was positive in both shoulders. Neurological evaluation was nonfocal. MRI assessments were requested.

On July 14, 2017, a contrast MRI of the **right** shoulder was performed, requested by Dr. Borick. **Small full-thickness tear** involving the anterior portion of the supraspinatus was noted without retraction. No muscular atrophy is noted. Infraspinatus tendinopathy is noted. Biceps tendinopathy was described at the intra-articular portion. A superior labral tear was described. MRI of the **left** shoulder performed the same day with contrast revealed no labral tear. Mild tendinopathy was described at the supraspinatus. Some tendinopathy of the intra-articular biceps was noted.

On July 17, 2017, Mr. Moore was evaluated by Dr. Borick, orthopedic surgeon, for evaluation of pain in both shoulders following an injury on June 9, 2017 while at work when a cable line broke and he fell. He described pain anteriorly over both shoulders. He described intermittent discomfort with certain movements. He described limited range of motion. Pain is worse on the left than right. Pain of 8/10 was described. Physical examination described him as 6'1" tall weighing 245 pounds with a BMI of 32. Physical examination documented a normal cervical assessment. Examination of the right shoulder described mild to moderate anterior shoulder tenderness on the right with mildly diminished range of motion. Mild weakness was described. Pain was noted with resisted movement and with provocation. Left shoulder examination described tenderness to palpation about the shoulder with diminished active motion and mild weakness. Provocation was positive. Neurological evaluation was normal. Previous MRI evaluations from July 14, 2017 are described. The right shoulder examination noted a small full-thickness tear of the supraspinatus with bicep's partial subluxation and a superior labral tear. Left shoulder MRI showed no labral tear with minimal supraspinatus tendinopathy. Mild subluxation was described at the bicep. Treatment options were discussed. Surgery of the left shoulder was recommended.

On July 21, 2017, he returned to Dr. McGaugh. His left rib cage pain had resolved. Bilateral shoulder pain remained moderate, now constant. Previous assessment by Dr. Borick was described with operative intervention recommended for both shoulders. Physical examination described pain to palpation over the left biceps and acromioclavicular joint with limited range of motion. Similar findings were described on the right.

On September 8, 2017, nurse practitioner Jones evaluated him for upper respiratory symptoms. No musculoskeletal symptoms are offered. No musculoskeletal findings are documented.

On September 11, 2017, Dr. Borick performed a **right shoulder arthroscopy** with glenohumeral debridement, subacromial decompression, open rotator cuff repair and open biceps tenodesis. The operative report described debridement of some fraying labral tissue and type II SLAP tear. Labrum was debrided. Biceps was transected. Full-thickness tear was identified. Mini open repair was performed of the rotator cuff and biceps tenodesis.

On December 1, 2017, he was evaluated by nurse practitioner Jones for routine follow-up on hyperlipidemia, hypertension and diabetes mellitus. No musculoskeletal complaints are offered. Physical examination describes no musculoskeletal complaints. Neurological evaluation is normal.

On February 15, 2018, MRI of the right shoulder without contrast was performed. Postsurgical changes were noted regarding rotator cuff repair and biceps tenodesis. No recurrent full-thickness tear was identified. Interstitial changes were noted at the infraspinatus tendon.

On July 16, 2018, he was evaluated by nurse practitioner Jones for a cough. No musculoskeletal symptoms are described.

On September 5, 2018, Dr. Borick performed a **left shoulder arthroscopy** with glenohumeral debridement, subacromial decompression and open biceps tenodesis. The operative report describes some fraying of the labral tissue that was debrided. Some fraying was also described involving the anterior supraspinatus tendon without significant partial thickness or full-thickness tearing. Biceps tenodesis was performed in a mini open fashion.

On January 23, 2019, Dr. Borick performed **exploration of the right shoulder** and anterior right upper arm with release of fascia, adhesions and scar tissue. An attempt was to be made at a revision biceps tenodesis. Long head biceps tendon was not visible through the surgical field. His previous surgical incision was also opened up. No recurrent rotator cuff tear was identified. Revision tenodesis was unable to be performed.

On January 28, 2019, he returned to Dr. Borick in postoperative follow-up for his left shoulder arthroscopy. He continued to complain of discomfort. He was attending physical therapy. Right shoulder was described as persistently painful over the anterior arm. Weakness was described with elbow flexion and forearm supination. He described a muscular defect "consistent with failed biceps tenodesis" that had been present since a few months following his initial surgery. Bicep pain was described as limiting the use of his right arm.

On February 28, 2019, he returned to Dr. Borick. He was doing well from his right shoulder postoperatively he continued to complain of clicking in the left shoulder. A repeat MRI the left shoulder was requested. He was to continue physical therapy for the right shoulder.

On March 6, 2019, an MRI of the left shoulder was undertaken without contrast. Partial tear was described in the supraspinatus. Previous biceps tendon repair was noted.

On March 8, 2019, he was seen by Dr. Borick. He is seen in postoperative follow-up for his right shoulder and was noted to be improving with range of motion and pain. He was in physical therapy. Continued clicking was described in the left shoulder. A left shoulder subacromial injection was performed with good pain relief. A 2nd opinion consultation was requested from Dr. Szerlip.

On March 18, 2019, he was seen by Dr. Szerlip for ongoing complaints of left shoulder pain. Pain remained 6/10, worse with shoulder range of motion. He had been operating heavy machinery at work. Examination noted persistent tenderness about the shoulder with slight loss of range of motion. Impingement was negative. Activity modifications were discussed. He was taken off work. Physical therapy was recommended.

On June 3, 2019, he was seen in follow-up by Dr. McGaugh. The note indicates that "we haven't seen him in 2 years. He has had 4 surgeries on his right shoulder and has PT on his left and right shoulder. He wants another opinion on his left shoulder". **No cervical** complaints are documented. No neurological complaints are documented. Physical examination is limited to the shoulder. Neurological evaluation is normal.

On June 3, 2019, he was seen by orthopedist Dr. Ben Szerlip documented no change in pain despite physical therapy. He described intermittent episodes of radiating pain down the lateral aspect of the left upper arm. Persistent clicking in the shoulder was described. **No cervical** complaints are documented. Physical examination documents pain with impingement maneuvers.

On July 31, 2019, Mr. Moore was evaluated in the emergency room at Cedar Park Regional Medical Center with complaints of chest pain. He is 51 years of age with a history of hypertension, diabetes and anxiety. He indicated that he had "had panic attacks in the past but today felt different". He stated that he walks "approximately 60-70 miles per week" and had walked 6 miles that day and felt like he may have gotten "overheated".

On August 9, 2019, he was seen by nurse practitioner Jones for follow-up on complaints of leg pain. He went to the emergency room the day prior for numbness in the right arm and right leg. He was told that he had a panic attack. He described persistent numbness in the **right** arm and right 4th and 5th digit. He is described as having a "**chronic neck pain**" and "feels he needs an MRI". Physical examination describes no musculoskeletal complaints or abnormalities. **No** neurological abnormalities are noted. MRI the cervical spine was requested.

On August 12, 2019, MRI the cervical spine was performed at Longhorn Imaging, requested by Teresa Jones. A 2.8 mm central herniation is described at C6-7 with a posterior annular fissure. Mild left neuroforaminal narrowing are described. A posterior annular fissure is noted at C5-6 with a focal **right** paracentral/foraminal herniated disc of 6.6 mm is described at C5-6 with contact on the **right** C6 nerve root and severe **right** neuroforaminal narrowing. A posterior annular tear with broad-based right to the central 2.3 mm disc herniation is described at C4-5. A 1.3 mm central herniation is described at C3-4 without stenosis.

On August 16, 2019, he was evaluated by nurse practitioner Teresa Jones for follow-up on his hyperlipidemia, hypertriglyceridemia and type II diabetes. **No** cervical pain is described. No neurological symptoms are noted. He is 6 feet tall and 251 pounds with a BMI of 34. Past medical history was remarkable for type II diabetes, abnormal testosterone, hyper triglyceride/hyper lipids,

anxiety, hypertension and hip pain. Prior history of surgery to the right knee is noted along with a prior right shoulder rotator cuff surgery in October 2017 and hernia repair times 3 in February 2016. Musculoskeletal examination is **unremarkable**. **No** musculoskeletal complaints are noted.

On October 14, 2019, he was evaluated by nurse practitioner Teresa Jones. Symptoms of ongoing anxiety and depression are noted. Additionally, he described "chronic pain in both shoulders. Needs surgery and will have consult in 2 weeks. Has chronic neck pain. Some numbness in right arm from neck". A prior history of right shoulder rotator cuff surgery is documented from October 2017. Physical examination documents abnormal motor strength with limited left shoulder abduction to 90° and diminished grip strength bilaterally.

On March 25, 2020, a causation opinion was submitted by orthopedic spine specialist Robert Josey, MD who noted a "clear cervical radiculopathy" on presentation to him, substantiated by an MRI evaluation showing a disc herniation at C5-6. He found the mechanism of injury is consistent with causation of a disc herniation.

On the same date, orthopedic surgeon Jamie Lynch, MD also provided a causation letter noting the MRI of the cervical spine obtained 2 years after the injury event at issue. Given the mechanism of injury, he stated that the cervical spine MRI findings were a direct result of the fall given no prior history or evidence of neck pain or injury.

On April 23, 2020, a peer review was submitted by Kenneth Ford, MD, orthopedic surgeon. He noted the accepted compensable injuries were limited to both shoulders. He found no evidence to suggest a causal relation to subsequent cervical spine findings. He noted that Mr. Moore did not complain of any cervical discomfort until 2 years after the date of injury and that the findings noted on cervical MRI were consistent with a normal aging process and the ordinary disease of life multilevel degenerative disc disease.

On May 27, 2020, a life care plan was prepared by Jacqueline Kelly, MD.

> Medications include gabapentin 100 mg 3 times a day, over-the-counter ibuprofen and over-the-counter CBD.

> Future medical includes both a proposed a single level anterior cervical discectomy and fusion and a "right biceps tenodesis, repair/revision".

On September 4, 2020, Mr. Moore underwent a deposition testimony.

> He acknowledged that work compensation had acknowledged the extent of injury as related to his shoulders. He stated that he was awaiting another approval for surgery on the left shoulder.

> He stated that he did not recall the fall itself. He acknowledged that in his incident report the fall was estimated at 10-20 feet but he stated that he "had no idea how far I had fallen until I was told how far I had fallen" by people that did the investigation. He stated that he was able to climb down a ladder under his own power.

> He stated that he had not been told by a physician that he suffered a concussion as a result of the fall. He also stated that he did not recall telling a physician about any concussion symptoms. He did acknowledge that he was making a claim for a traumatic brain injury.

He stated that he was currently seeing Dr. Lynch for his shoulder. He stated that she was trying to arrange surgery on his left shoulder.

He stated that he did not do any exercises to try to strengthen his shoulders or neck.

He stated that he had never been released to work.

He described injections from Robert Marks.

He stated that a month prior, he was lifting 2 gallons of milk with his left hand and "popped my shoulder joint, completely detached from my shoulder".

**EXAMINATION AND RANGE OF MOTION**

This is a well-developed well-nourished gentleman of apparent stated age in no acute distress. He relates bathroom without difficulty or system devices.

Examination of the right shoulder reveals well-healed anterolateral incision at the shoulder of 6 cm with another 11 cm anterior incision over the proximal upper arm. Popeye deformity is noted at the biceps tendon. No specific tenderness to palpation is noted in the shoulder. He demonstrates full active range of motion with complaints of pain at extremes. Mild discomfort is noted with impingement and supraspinatus maneuvers. He has slight loss of strength on testing of supination against resistance. Neurological evaluation is normal.

Examination of the left shoulder reveals healed arthroscopic portals. He demonstrates flexion to about 120° with complaints of pain. Active is equal to passive. Abduction is limited to 90°. External rotation is normal. Pain is noted with impingement maneuver. He has pain with O'Brien maneuvers well. Tenderness to palpation is noted of the greater tuberosity. Popeye deformity is noted at the biceps tendon. Diminished strength is noted on supination with resistance. Neurological evaluation is normal.

**Radiology review**

MRI of the right shoulder from July 14, 2017 is reviewed. This appears to be a contrast study. Tear of the supraspinatus is identified at its insertion point with no significant retraction. Some intrasubstance changes are noted at the intra-articular biceps. Labrum appears intact. Minor degenerative changes noted at the acromioclavicular joint. No muscular atrophy is noted. No fatty infiltration is identified.

MRI of the left shoulder from July 14, 2017 is reviewed. Intra-articular contrast is noted. Intra-articular biceps is intact. Acromioclavicular joint shows mild to moderate degeneration. No rotator cuff tears identified. No muscular atrophy is noted. No fatty infiltration is noted. Labrum appears intact.

MRI of the right shoulder from February 15, 2018 is provided. Sequela of a previous biceps tenodesis and rotator cuff repair is identified. Intra-articular portion of the biceps tendon is absent. Distal clavicle is intact. Supraspinatus repair appears intact although there are some tendinosis changes in the infraspinatus. Labrum is unremarkable.

MRI of the left shoulder from March 6, 2019 is provided. Evidence of a previous biceps tenodesis is noted diaphysis. Absence of the long head biceps is noted. Signal changes noted in the supraspinatus suggestive of some tendinosis or partial tearing. Distal clavicle appears intact. No significant labral changes are noted muscular atrophy is noted. No fatty in filtration is identified.

MRI of the cervical spine is submitted from August 12, 2019. Multilevel disc degeneration with desiccation is noted, most significant C5-6 more than C6-7. Uncovertebral hypertrophy is noted at C5-6. Large central and right-sided disc herniation is identified at C5-6 with nerve root impingement. This appears to measure approximately 6 mm. A central and right .5 mm protrusion is noted at C4-5. No nerve root impingement is identified. Small central protrusion is noted at C3-4.

**IMPRESSION**

Right rotator cuff tear, status post arthroscopy; bilateral biceps tendinitis, status post bilateral biceps tenodesis, failed

**Opinion**

Based upon reasonable medical probability and based upon review of the medical records as well as today's evaluation, Mr. Moore reasonably sustained injuries to both shoulders consistent with the mechanism of injury as described.

Arthroscopy of the right shoulder with rotator cuff repair was reasonable. An attempted biceps tenodesis was reasonable. Arthroscopy of the left shoulder with attempted biceps tenodesis was reasonable.

Unfortunately, biceps tenodesis on both sides was ultimately unsuccessful. He is left with long head biceps tendon insufficiency bilaterally.

With regard to treatment going forward, conservative treatment of rupture of the proximal biceps tendon is usually sufficient. The residual cosmetic deformity is usually mild and well tolerated. Intermittent biceps muscle cramping and some degree of shoulder pain typically persists. Some recent studies have identified only minimal improvement with attempts at tenodesis versus nonoperative treatment (Aflatooni, J et al; J Orthop Surg R. 2020; 15:56).

His left shoulder MRI of March 2019 is unremarkable for any surgical pathology. Based on his physical examination today as well as his report of an injury while lifting 2 gallons of milk in August of this year, I suspect he now has been incompetent long head biceps on the left. Additional operative intervention related to the injury event at issue is unlikely to result in any significant improvement, in my opinion.

While he describes persistent discomfort with some limitation in range of motion, left more than right, he is fit to engage in any activities that he tolerates. However, empirically, he will likely be limited in his ability to engage in activities that require repetitive overhead activity or heavy lifting.

He requires no additional operative intervention to the shoulders with regard to the injury event at issue. Continuing in a regular home exercise program will be beneficial for both shoulders.

If you have any additional questions regarding this matter, please do not hesitate contact me.

**DISCLAIMER:**

The rationale for the opinions stated in this report are based on clinical experience and standards of care in the area, as well as broadly accepted literature which includes numerous textbooks, professional journals, nationally recognized treatment guidelines, and peer consensus.

The opinions rendered in this case are the opinions of this evaluator. These opinions are based upon reasonable medical probability. This evaluation has been conducted on the basis of the medical examination and documentation as provided, with the assumption that the material is true and correct.

If more information becomes available at a later date, an additional service / addendum report / reconsideration may be requested. Such information may, or may not, change the opinions rendered in this evaluation. The opinion is based on a clinical assessment, examination, and documentation. This opinion does not constitute per se a recommendation for specific claims or administrative functions to be made or enforced.

This note was dictated using voice recognition software. Please excuse any unusual errors and consider the limitation of voice recognition software in the interpretation of these records.

Sincerely,

David G. Vanderweide, M.D.

# DAVID G. VANDERWEIDE, M.D., P.A.

### DIPLOMATE, AMERICAN BOARD OF ORTHOPEDIC SURGERY
### FELLOW, AMERICAN ACADEMY OF ORTHOPEDIC SURGERY

**EDUCATION**

- Texas A & M University, B.S., Biology, 1984, High Honors
- Baylor College of Medicine, M.D., 1988, with Honors
- Baylor College of Medicine, Orthopedics, Internship, 1988 – 1989
- Baylor College of Medicine, Orthopedics, Residency, 1989 – 1993

**HOSPITAL STAFF**

- Houston Physicians' Hospital, Chief of Staff, 2009 – 2016
- Houston Physicians' Hospital, Chairman, Medical Executive Committee, 2008 – 2016
    - Houston Physicians' Hospital, Chairman, Credentials Committee, 2008 – 2016
- The Methodist Hospital, 2010 – 2016
- Memorial Hermann Southeast Hospital, Chief of Orthopedics, 1997, 1998, 2001 – 2008
- Memorial Hermann Southeast Hospital, Medical Executive Committee, 2001 – 2008
- Memorial Hermann Southeast Hospital, Trauma Committee, 2002 – 2008
- Memorial Hermann Southeast Hospital, Surgery Committee, 2001 – 2008

**ORGANIZATIONS**

- American Board of Orthopedic Surgery, Diplomate; Certified 1995, Re-certified 2004, 2015
- American Academy of Orthopedic Surgery, Fellow
- Society of Military Orthopedic Surgeons
- American Medical Association
- Texas Medical Association
- Harris County Medical Society
- American Academy of Disability Evaluating Physicians, Fellow
- American College of Surgeons, Fellow

**PROFESSIONAL ACTIVITIES**

- Texas Department of Insurance, Division of Workers Compensation, Designated Doctor 1995 – 2010
- Veterans Administration, Compensation & Pension, Orthopedic Evaluator, 1995 - 2005

333 NORTH TEXAS AVENUE, SUITE 2000
WEBSTER, TEXAS 77598
281-481-2649
281-481-0080 FAX

# DAVID G. VANDERWEIDE, M.D., P.A.

## DIPLOMATE, AMERICAN BOARD OF ORTHOPEDIC SURGERY
## FELLOW, AMERICAN ACADEMY OF ORTHOPEDIC SURGERY

All Payments are to be made to **David G. Vanderweide, MD, PA**

**Medical Evaluation**            $850.00 less than 1 year from DOI
                                  $1050.00 greater than 1 year from DOI

    IME/RME assessments are prepaid, nonrefundable and nontransferable. The prepaid fees may be applied to a rescheduled evaluation of the same individual.

**Review of records/Phone conference**    $500.00 per hour

**Deposition**                             $3,000.00 deposit

    Your **non-refundable** deposit of $3,000.00 confirms your deposition appointment. The scheduling of a deposition requires a significant amount of case preparation, administrative time and effort in rescheduling patients and surgeries. After the deposition takes place, this **non-refundable deposit** will be applied to the total deposition charges. The deposit is **not transferable** to other rescheduled dates or to other cases.

    Your deposit covers Dr. Vanderweide's standard preparation time and the first hour of standard deposition. You will be billed at the rate of $1,500.00 per hour for additional deposition time in 15 minute increments. You will be billed for additional preparation time/record review as required.

    The **balance** of the deposition fees is due **30 days** after the deposition is completed.

    Please note that **your deposition date is not confirmed** until the deposit is received and that proposed dates may be unavailable if confirmation is delayed. We do not "pencil in" dates.

**Trial Testimony**                        $10,000.00/day + expenses

    There is a $5,000.00 **non refundable** deposit. Dr. Vanderweide will have to cancel his surgery and clinic schedule for that day. Please note that Trial Testimony dates **are not scheduled less than two weeks** in advance of the trial date. *We strongly encourage you to plan accordingly.* The deposit is **not transferable** to other rescheduled dates or to other cases.

    Please note that **your trial testimony date is not confirmed** until the deposit is received and that proposed dates may become unavailable if confirmation is delayed. We do not "pencil in" dates.

---

**Any cancellations within 14 calendar days of the confirmed date of deposition or trial testimony will result in forfeiture of the entire deposit.**

By your signing of this agreement, we look to you, the attorney, for the payment of the above fees, notwithstanding any relationship between you and your client. You acknowledge receipt of this fee sheet and you accept the rates and terms as described:

_____ (signature)      \_\_\_\_/\_\_\_\_/_____ (date)

_____ (printed name)      _____ (case)

333 NORTH TEXAS AVENUE, SUITE 2000
WEBSTER, TEXAS 77598
281-481-2649
281-481-0080 FAX

| Date | Case |
|---|---|
| 5/8/15 | Kevin Dyche v. US Environmental Services, LLC |
| 5/29/15 | Ronald Crim v. R. L. Eldridge Construction, Inc. and Texas Mutual Insurance Company |
| 6/2/15 | Karen and Kevin Murphy v. Tractor Supply Company |
| 6/19/15 | Robert Thacker v. Diamond Offshore |
| 9/18/15 | Carlos Avila v. Gotland Schiffahrt GMBH & Company; and Lubeca Marine Germany GMBH |
| 11/18/15 | Dwynyas Sanders v. Grocers Supply Company, Inc. |
| 8/3/16 | Rita Arocha, Cristal Baylor and George Baylor v. Carlos Harris and Horizon Coach Lines |
| 8/18/16 | Jether Christian v. Oceanwide America, Inc. |
| 10/12/16 | Quang Nguyen and Hong K. Nguyen v. Dickinson ISD |
| 10/26/16 | Quality Carriers, Inc., Gulf Coast Express Carriers Inc. & Bobby Nixon v. Willie Lee Pritchett, Franc Winston |
| 11/16/16 | Pamela Bartos v. Dollar General Corporation and Edward Afriogo |
| 11/30/16 | Karina Zuniga v. Palletized Trucking, Inc. and David Heard |
| 12/7/16 | Donna Gail Jackson v. Humberto Leal, Individually and d/b/a H. Leal Haulers and Artemio Leal |
| 1/4/17 | Yolanda B. Cortez v. Cypress Fairbanks ISD |
| 1/18/17 | Dustin Long v. Edward Artega and Daniel Moreno |
| 6/14/17 | Shen Fu He v. Swift Transportation, Company of Arizona |
| 8/23/17 | Mario Guerrero v. Palletized Trucking, Inc. |
| 9/8/17 | Mike Markalonis v. REM Directional, et al |
| 10/4/17 | Susan Smith v. Scott Burrows and Brenda Grumbling |
| 10/6/17 | Gregory Cline v. Soc-SMG, Inc. and Starr Indemnity & Liability Company |
| 12/20/17 | Karitha Ginjupalli, D.D.S. v. Provident Life & Accident Insurance Company d/b/a UNUM |
| 12/21/17 | Thomas Williams v. Diamond Offshore Company, et al |
| 2/22/18 | Randy Wilkinson v. Jesus Guadelupe Gonzales & Palletized Trucking, Inc. |
| 2/23/18 | Craig Wiltfang v. Rush Truck Leasing and Naegeli Transportation |
| 3/16/18 | Jeremy Martin v. Port Terminal Railroad Assosiates |
| 3/22/18 | Courtney Bell v. Paul Beasley and Jowin Express, Inc. |
| 4/12/18 | Ronald Maddox v. Eurest Support Services, et al |
| 4/19/18 | Hassan Sheikhvand v. Jessica Lin and Brian Baird |
| 4/20/18 | Mohammed Hamdan and Rebhi Hamdan v. Kofile Technologies and William Gerwick |
| 5/11/18 | Clarence Fine v. Bludworth Marine |
| 5/25/18 | Richard Soliz and Mark Holland v. Cowan Systems |
| 6/1/18 | Eva Contreras v. Sol Marena Fanini and Marisol Cruz Walker |
| 7/6/18 | Repka, et al v. Prestige Gunite |
| 8/15/18 | Dalzell v. Allied Property and Casualty |
| 9/7/18 | Vinod Patel & Kokila Patel v. Rebecca Lynn DeFazio |
| 9/19/18 | Veronica Leal & Jesus Garcia v. Palletized Trucking, Inc et al |
| 9/21/18 | Curtis Radick v. UPRR |
| 9/28/18 | Patrick Payne v. UPRR |
| 10/3/18 | James Eugene Wolf v. Howard Elsworth Whitney & Leimer Brothers, Inc |

| Date | Case |
|---|---|
| 10/5/18 | James Brown v. North Houston Pole Line, et al |
| 10/12/18 | Michael Cowser v. Mesfine Tufa, et al |
| 10/17/18 | Patrick Collier v. O'Reilly Auto Parts |
| 10/24/18 | Malek Abushaaban v. Michael Angel Sanchez, Yellowstone Landscape Group, Inc & bio Landscape |
| 11/2/18 | Aubrey Davis v. Chaelene Leleo and Karen McKeague |
| 11/9/18 | Craig Scott v. The Saxton Group, LLC, Kimco Temple LP, Temple and Towne Ceter, LLC |
| 1/4/19 | Gary Hamby v. UPRR |
| 1/11/19 | Sharon Alemar v. Andrew Martin & Sumed Ent. Inc. |
| 1/18/19 | Cynthia Scorcelli v. Shaun Campos & Colonial Comp Mutual Insurance |
| 2/13/19 | Ottor Martinez v. Reytec Construction Resources Inc |
| 2/27/19 | Luis Machado v. Emigdio Olvera, Mario Cerritos & Adrian Barraza |
| 4/12/19 | Nicholas Picciandra v. Taylor Lauren, Adrian Barraza Burba & State Farm Ins. |
| 4/17/19 | Michael Eaglin v. Noble Services International LTD |
| 04/26/19 | Gaagu Richmond v. Kimberly Miles & Christopher James Smith |
| 5/3/19 | John Mounce v. UPRR |
| 5/31/19 | Juan Manzan v. Simon Property Group & HC Galleria |
| 6/28/19 | Barbara Rusin v. Miguel Meza |
| 8/2/19 | Carlo Moreno v. Luis Flores & Miranda Deliveries, LLC |
| 8/9/19 | Wilma Johnson v. Air Liquid America LP |
| 8/23/19 | Andress Ward v. Cardinal Logistics, et al |
| 8/30/19 | Duane Fugate v. Aspen Insurance |
| 10/11/19 | Orlando Garza v. Lorie Larson and Kevin Allen |
| 12/13/19 | Paul Young v. Barry Terrell |
| 12/18/19 | Alex Vargas v. C&G Welding |
| 1/3/20 | Ignacio Montoya v. Unimex & Pedro Perez |
| 1/17/20 | Kevin Brady v. Texas Terminals |
| 2/7/20 | Melvin Thomas v. Jennifer Joy Sutton |
| 2/14/20 | Rboert Tubbe v. XTO Energy Inc. & Frontier Drilling LLC |
| 3/13/20 | Kathy Hudson v. Frederic James Cytacki |
| 5/12/20 | Jordan Baca v. Rooms to Go |
| 8/10/20 | Jeffrey Hardy v. Transocean Offshore |
| 10/8/20 | Maria Sanchez v. Stripes |
| 10/13/20 | Justin Hines v. Echo Marine |
| 10/22/20 | Tran v. Olsteen |
| 10/29/20 | Shannan Riddle v. Superior Energy Services, et al |
| 11/5/20 | Enrique Arriaga v. Virdi Transport LLC |